UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

STRYKER CORPORATION, et al.,          )
                                      )
          Plaintiffs,                 )   Case No. 4:01-cv-157
                                      )
v.                                    )   Honorable Robert Holmes Bell
                                      )
NATIONAL UNION FIRE INSURANCE         )
COMPANY OF PITTSBURGH, PA., et al.,   )   **REPORT AND RECOMMENDATION**
                                      )   **ON JURY INSTRUCTIONS AND**
          Defendants.                 )   **SPECIAL VERDICT FORM**
                                      )

Pursuant to the court's memorandum opinion and order of September 15, 2005 (docket # 756), I have conferred with counsel in an effort to narrow and define the issues for trial. By report and recommendation entered September 26, 2005 (docket # 767), I recommended that two issues previously identified as questions of fact for the jury be decided by the court as matters of law. I also recommended an approach to the form of the special verdict.

Attached to this report and recommendation are a form of special verdict and eight proposed jury instructions, which deal with the factual issues propounded to the jury in the special verdict form. The verdict form and proposed instructions are premised on the assumption that the court accepts the previous report and recommendation. For this reason, the principal justification for the approach taken in the attached verdict form and instructions may be gleaned from the earlier report and recommendation.[1] The attached verdict form and instructions are necessarily provisional

---

[1] The proposed instructions incorporate elements found in plaintiffs' proposed jury instructions 13 through 35 and defendants' proposed instructions CV3.03 and special instructions

and tentative, and they are subject to revision in light of the actual evidence received at trial and the court's ruling on any motions for judgment under Rule 50.

In fashioning the attached proposed instructions, I have attempted to incorporate the substance of each party's proposed instructions, to the extent that those instructions were fairly worded and accurately reflected the law. In addition, I have reviewed each instruction with counsel during lengthy telephone conferences held on the record and have adopted numerous changes in response to their comments. Despite this effort, each side remains substantively dissatisfied with some aspects of the instructions and verdict form.

In the remainder of this report and recommendation, I address the principal disagreements raised by counsel, to the extent that those objections have not been addressed in the September 26, 2005 report and recommendation.

**1.**

Plaintiffs' proposed instruction no. 31 purports to set forth rules for interpreting ambiguous language in insurance policies. This proposed instruction sets forth six rules of construction, each one saying, in one way or another, that an insurance policy must be construed against the insurance company and in favor of coverage. I recommend that the instructions contained in plaintiffs' proposed instruction no. 31 be substantially rejected, with two exceptions, for the reasons that follow.

---

1 through 13. The proposed instructions attached hereto are intended to take the place of the cited instructions proffered by the parties in their entirety. I have not attempted to address other requested instructions, which fall outside the scope of the reference regarding identification of the issues to be tried.

Recent decisions of the Michigan Supreme Court make it clear that Michigan law considers an insurance policy to be a contract, subject to the general rules of interpretation that apply to all other contracts. *See, e.g., Rory v. Continental Ins. Co.*, 703 N.W.2d 23 (Mich. 2005); *Wilkie v. Auto Owners Ins. Co.*, 664 N.W.2d 776 (Mich. 2003); *Klapp v. United Ins. Group Agency, Inc.*, 663 N.W.2d 447 (Mich. 2003); *Farm Bureau Mut. Ins. Co. of Mich. v. Nikkel*, 596 N.W.2d 915 (Mich. 1999). In this series of cases, the Michigan Supreme Court made clear its rejection of "special rules" of construction applicable only to insurance contracts. In *Wilkie*, for example, the state Supreme Court rejected the rule of construction pursuant to which courts would construe an insurance policy in a manner that upholds the reasonable expectation of coverage by the insured. 664 N.W.2d at 782. More recently, in the *Rory* case, the Supreme Court rejected the concept that courts may refuse to enforce clear policy language that the courts deem "unreasonable," and specifically disapproved special rules of construction based on the labeling of an insurance contract as an "adhesion contract." 703 N.W.2d at 35 ("An 'adhesion contract' is simply that: a *contract*."). In her dissent, Justice Weaver remarked that the majority's opinion required rejection of "five decades worth of precedent that created specialized rules of interpretation and enforcement for insurance contracts." 703 N.W.2d at 56 (Weaver, J., dissenting). In cataloging the "special" rules of construction rejected by the majority in *Rory*, Justice Weaver listed most of the concepts embraced in plaintiffs' proposed jury instruction no. 31.

In light of this recent line of Supreme Court authority, it is fair to say that Michigan law now thoroughly repudiates special rules of construction for insurance contracts. "[I]nsurance policies are subject to the same contract construction principles that apply to any other species of contract." *Rory*, 703 N.W.2d at 26. The ultimate objective in construing an insurance policy, as

with any other contract, is to ascertain the intent of the parties. *Klapp*, 663 N.W.2d at 457. The principal Michigan Supreme Court decision relied upon by plaintiffs in support of their requested instructions, *Powers v. Detroit Auto. Inter-Ins. Exch.*, 398 N.W.2d 411 (Mich. 1986), has been severely undermined by these subsequent decisions of the Supreme Court and can no longer be considered good law.[2]  For example, in *Nikkel*, the Supreme Court "repudiated" the two-justice plurality opinion in *Powers* and remarked that "*Powers* is contrary to the most fundamental principle of contract interpretation -- the court may not read ambiguity into a policy where none exists." 596 N.W.2d at 920. More recently, the *Rory* court severely criticized the plurality opinion of *Powers*, which had decreed that all insurance contracts were contracts of adhesion and had applied the repudiated "reasonable expectations" doctrine to insurance policies. 703 N.W.2d at 39-40. In *Rory*, the Michigan Supreme Court signaled a clear intention to break with its earlier precedents, which had treated insurance contracts as being the product of imposition and overreaching by insurance companies and therefore subject to special rules of construction in favor of the insured. In light of *Rory* and the other recent Michigan Supreme Court cases cited above, I conclude that the Michigan Supreme Court would reject virtually every concept embraced in plaintiffs' proposed jury instruction no. 31, as these instructions are all premised on the now repudiated concept that insurance policies are adhesion contracts subject to special rules of construction in favor of the insured.

---

[2] Because the *Powers* decision was only a two-justice plurality, it has never been treated as binding precedent by the state courts. *See, e.g., VanDyke v. League Gen'l Ins. Co.*, 457 N.W.2d 141, 142 (Mich. Ct. App. 1990).

**2.**

Two exceptions survive the recent line of Michigan Supreme Court authority. The first is that exclusions from coverage, when ambiguous, are construed against the insurance company and in favor of coverage. *See Auto-Owners Ins. Co. v. Churchman*, 489 N.W.2d 431, 433-34 (Mich. 1992). This is a longstanding principle of Michigan law, *see, e.g., Pietrantonio v. Travelers Ins. Co.*, 275 N.W. 786, 788 (1937). This rule is not a rule of construction, and it does not depend upon a finding that the insurance company drafted the exclusion. Rather, the rule reflects the law's substantive reluctance to negate clear coverage on the basis of ambiguous exclusions. "A risk that comes naturally within the terms of the policy is not deemed to be excluded unless the intent of the parties to exclude it appears plainly, so that it cannot be misconstrued." 2 COUCH ON INSURANCE § 22:31 at 22-67 (3d ed. 1997); *see Heniser v. Frankenmuth Mut. Ins.*, 534 N.W.2d 502, 505 (Mich. 1995) ("An insurer is free to define or limit the scope of coverage *so long as the policy language fairly leads to only one reasonable interpretation* and is not in contravention of public policy.") (emphasis added). This is also consistent with the concept that the insurance company bears the burden of proving the application of an exclusion from coverage. *See Morril v. Gallagher*, 122 N.W.2d 687, 691 (Mich. 1963); *Roddis Lumber & Veneer Co. v. Am. Alliance Ins. Co. of N.Y.*, 47 N.W.2d 23, 26 (Mich. 1951); *accord Aetna Cas. & Sur. Co. v. Dow Chem. Co.*, 28 F. Supp. 2d 440, 444 (E.D. Mich. 1998). As the party with the burden of proof to establish an exclusion from coverage, the insurance company bears the risk of nonpersuasion on this issue. *See McKinstry v. Valley Obstetrics-Gynecology Clinic, P.C.*, 405 N.W.2d 88, 93-94 (Mich. 1987). The recent line of Michigan Supreme Court authority does not appear to disturb this rule, which applies narrowly to

policy exclusions. I have therefore included such an instruction in Special Instruction 7, which deals with the exclusion in Endorsement No. 15.

**3.**

The second exception is the rule that ambiguities in an insurance policy must generally be construed against the insurance company and in favor of the insured. The Michigan Supreme Court recently considered this rule in *Klapp v. United Insurance Group Agency, Inc.*, 663 N.W.2d 447 (Mich. 2003). The court made it clear that this rule, called the "rule of *contra proferentem*," is merely a specific application of the general rule that ambiguities in a contract are construed against the drafter. 663 N.W.2d at 456. The court went on to note that the *contra proferentem* rule is a "rule of last resort" which applies only where "the jury remains unable to determine what the parties intended after considering all relevant extrinsic evidence. . . ." *Id.* at 455. Only then should the jury find in favor of the nondrafter of the contract pursuant to the rule of *contra proferentem. Id.* The court further noted that the rule is not a rule of contract interpretation, but a "rule of legal effect."

> It is a rule of legal effect, rather than a rule of legal interpretation, because its purpose is not to render more accurate or more perfect a jury's understanding of the meaning of the contract, but is merely to ascertain the winner and the loser in connection with a contract whose meaning has eluded the jury despite all efforts to apply conventional rules of interpretation.

663 N.W.2d at 456.

The *Klapp* decision makes clear that the *contra proferentem* rule is still recognized under Michigan law, but only in limited circumstances. It is not a rule that applies only to the disadvantage of insurance company, but applies, as a last resort, in any case where one party is

responsible for providing contract language. The rule only applies where one party drafts the document. Contrary to plaintiff's suggestion, the law does not conclusively presume that the insurance company is always the drafter of policy language, although such is often the case. The courts of this country have refused to apply the *contra proferentem* rule woodenly. The rule has no application where, as here, the ambiguous provisions were dictated by statute or were negotiated by the contracting parties. This is not only the longstanding law of Michigan, *see Bay Trust Co. v. Agricultural Life Ins. Co.*, 271 N.W. 749, 750 (Mich. 1937); *see also Auto-Owners Ins. Co. v. Gallup*, 477 N.W.2d 463, 464 (Mich. Ct. App. 1991), but a generally accepted rule throughout the country. *See Newport Associates Dev. Co. v. Travelers Indem. Co.*, 162 F.3d 789, 794 (3d Cir. 1998); *Pittston Co. Ultramar Am. Ltd. v. Allianz Ins. Co.*, 124 F.3d 508, 521 (3d Cir. 1997); *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 639 (7th Cir. 1992); *McDermott Int'l, Inc. v. LLoyds Underwriters of London*, 944 F.2d 1199, 1207 (5th Cir. 1991); *Eagle Leasing Corp. v. Harford Ins. Co.*, 540 F.2d 1257, 1261 (5th Cir. 1976) (When dealing with manuscript policy, *contra proferentem* rule has "no realistic application to a contract confected by a large corporation and a large insurance company each advised by competent counsel and informed experts."); *Information Leasing Corp. v. McGladrey & Pullen, L.L.P.*, No. 03-5111JNEJGL, 2005 WL 1706113, at *3 (D. Minn. July 21, 2005); *Silicon Image, Inc. v. Genesis Microchip, Inc.*, 271 F. Supp. 2d 840, 850 (E.D. Va. 2003) ("When the contract terms are negotiated, *contra proferentem* is inapplicable.") (collecting cases); *see generally* 2 COUCH ON INSURANCE § 22:25 (3d ed. 1997 & Supp. 2005).

    The evidence indicates that the insurance policy, in its entirety, was the subject of negotiation. The basic policy itself was not a Winterthur form but was substantially adopted from

the National Union policy by which Stryker had been covered the previous year. Endorsement No. 15 was not part of defendants' standard policy form, but was added to the contract by negotiated agreement of the parties. In those negotiations, Stryker was represented both by counsel and by Marsh & McClennan. The language in question was substantially provided by a broker, Daniel Dean, employed by Marsh & McClennan, *Stryker's* broker. Dean's deposition clearly establishes that the endorsement language was not exclusive to Winterthur, but had been used for years by other insurance companies and other insureds to cover risks posed by medical implants. (Dep. 20-22, 33-34). It is undisputed that parts of Endorsement No. 15 itself were modified by negotiation. The parties disagree as to whether Dean was acting as agent for the insurance company or the insured. This factual disagreement, however, is irrelevant. The record clearly shows that Dean substantially provided the endorsement language, discussed the endorsement with both parties at one time or another, and that the final product was the result of negotiation, not unilateral imposition by the insurance company. Endorsement No. 15 was clearly a negotiated, manuscript endorsement, not dictated unilaterally by the Insurance Company. In such circumstances, the *contra proferentem* rule does not apply. *See, e.g., Newport Assoc.*, 162 F.3d at 794 (where policy language was supplied by broker and was not "unilaterally imposed" by insurance company, *contra proferentem* rule did not apply to resulting negotiated language, regardless of whose agent the broker was).

The Seventh Circuit's decision in *Northbrook Excess & Surplus Insurance Company v. Procter & Gamble Co.*, 924 F.2d 633 (7th Cir. 1991), is instructive. The issue in that case is whether the trial court erred in refusing to instruct the jury that ambiguous provisions in an insurance contract should be construed most strongly against the insurance company. Applying Ohio law, the Seventh Circuit found that the district court committed no error in refusing to deliver the instruction

-8-

proffered by the insured, because "the rule is grounded in the need to protect an insured from an insurer who has had exclusive control of the drafting process," a concern that was not implicated in that case. 924 F.2d at 638. The Court of Appeals determined that the insured was a co-drafter of the policy, and was not "simply a party given a take-it-or-leave-it option." Rather, the policy was the product of negotiation by a sophisticated insured. *Id.* at 639. The court determined that Ohio, "like other jurisdictions," would not apply the *contra proferentem* principle to this situation, in which the principle's underlying rationale is inapplicable. The *Northbrook* decision is but one example of the nearly universal rule in this country, pursuant to which negotiated insurance policy language is not subject to the *contra proferentem* rule.

**4.**

A related issue arises from plaintiffs' objection to my proposed Special Instruction No. 4, which places upon plaintiffs the burden of proving their contention that the parties intended that all claims and lawsuits related to a single batch of medical products would be included in a single policy year. This issue arises from plaintiffs' argument that the parties intended to deviate, in the case of implantable medical devices, from the clear provisions of the standard policy. The standard policy, in paragraph I, unambiguously extends coverage only to claims for bodily injury "that takes place during the Policy Period." Plaintiffs contend that Endorsement No. 15, which applies only to implantable medical devices such as the Uni-Knee, alters this provision. Although the Endorsement does not expressly address the bodily injury requirement, plaintiffs contend that its intent was to "telescope" all claims related to a batch of medical devices into a single policy year, regardless of the date of injury. In short, plaintiffs seek coverage for claims clearly not included in

the standard policy by relying on ambiguous language in an endorsement, bolstered by extrinsic evidence. Special Instruction No. 4 places the burden on plaintiffs to prove this element of their *prima facie* case, because Michigan law has always placed the burden of proof on the insured to prove coverage. *See Heniser*, 534 N.W.2d at 505 n.6; *Solomon v. Royal Maccabees Life Ins. Co.*, 622 N.W.2d 101, 102 (Mich. Ct. App. 2001) ("A generally recognized principle of insurance law is that the burden of proof lies with the insured to show that the policy covered the damage suffered."). Furthermore, the law generally places the burden of proof on the party asserting a fact to be true. *See Livingston Shirt Corp. v. Great Lakes Garment Mfg. Co.*, 88 N.W.2d 614, 617 (Mich. 1958).

      While acknowledging this general principle, plaintiffs nevertheless argue that the insurance company bears the burden of proof to disprove coverage in the case of ambiguous contract language. Again, plaintiffs rely on the *contra proferentem* rule, but seek to expand it to the point where it has the effect of shifting the burden of proof from the plaintiffs to the insurance company on issues of coverage. As demonstrated in the last section, plaintiffs are not entitled to rely on the *contra proferentem* rule in the circumstances of this case. Even if the rule were deemed to apply, however, plaintiffs have not demonstrated that the Michigan courts understand the rule to shift the burden of proof from the plaintiff on issues of coverage. Plaintiffs cite no Michigan case in support of this proposition.

      Plaintiffs do cite several out-of-state authorities. Although some of these authorities state or imply that the *contra proferentem* rule shifts the burden of proof or the burden of proceeding in an insurance case, none of these cases would be followed by the Michigan Supreme Court. *Reliance Ins. Co. v. Armstrong World Indus., Inc.*, 614 A.2d 642 (N.J. Super. Ct. 1992), is the

decision of a single judge of the New Jersey trial court. This decision was reversed by the appellate division and is therefore not authoritative law, even in New Jersey. *See Reliance Ins. Co. v. Armstrong World Indus., Inc.*, 678 A.2d 1152 (N.J. Super. Ct. App. Div. 1996). *Concord Hospital v. New Hampshire Med. Malpractice Joint Underwriting Ass'n*, 633 A.2d 1384 (N.H. 1993), does indeed hold that the burden is on the insurance carrier to prove a lack of coverage. The New Hampshire Supreme Court was applying a New Hampshire statute, N.H. Rev. Stat. § 491:22-9, which places the burden of proof on the insurance company to disprove coverage in *every* case, even in the absence of ambiguity. 633 A.2d at 1386. Obviously, New Hampshire law cannot be considered persuasive on this point in the State of Michigan, which has no such statute. *Morgan Stanley Group, Inc. v. New England Ins. Co.*, 225 F.3d 270 (2d Cir. 2000), involved New York law, in which the court, and not the jury, determines the meaning of policy language, even in the case of an ambiguity. The New York courts have apparently adopted a complex burden-shifting scheme to guide the court's determination of construction issues. 225 F.3d at 275-76. Again, Michigan law is to the contrary, and the New York scheme of shifting the burden of proceeding in bench trials can have no application here. *Twombly v. AIG Life Ins. Co.*, 199 F.3d 20 (1st Cir. 1999), applying Maine law, did not hold that the burden of proof on coverage issues shifts to the insurer. Rather, it was a straightforward application of the rule that the burden of proving exclusions falls on the insurer. The *Twombley* court held that the insured was entitled to have ambiguity resolved in her favor, "unless the insurer can prove through extrinsic evidence *that the parties intended to exclude* the sort of business travel on which [the insured] was engaged." 199 F.3d at 23 (emphasis added). Finally, *Praham v. Rupp Construction*, 277 N.W.2d 389 (Minn. 1979), does not support plaintiffs' position.

The issue in *Rupp* was whether the insurance company was obligated to defend a suit against the insured. In resolving this issue, the Minnesota Supreme Court stated as follows:

> The obligation to defend is contractual in nature and is determined by the allegations of the complaint and the indemnity coverage of the policy. If any part of a cause of action is arguably within the scope of coverage, the insurer must defend. Any ambiguity is resolved in favor of the insured, and the burden is on the insurer to prove that the claim clearly falls outside the coverage afforded by the policy. If the claim is not clearly outside coverage, the insurer has a duty to defend.

277 N.W.2d at 390. Obviously, the Minnesota court was not dealing with ambiguities in insurance policies, but ambiguities in claims set forth in a complaint by an injured party against the insured. Although the rule in Michigan is consistent with that stated by the *Rupp* court, that rule has no application here. The *Rupp* court did not state or imply that the insurance company has the burden of disproving coverage when there is an ambiguity in *policy language*.

In short, Michigan law requires the court to place the burden on plaintiffs to prove each element of their *prima facie* case and on defendants to prove the applicability of exclusions from coverage. The attached instructions seek to do so.

**5.**

Defendant has presented four proposed instructions concerning imputed knowledge. (Special Instruction Nos. 7, 8, 9, 10). Defendant's instructions 7 and 8 are accurate statements of Michigan law concerning imputed knowledge and therefore have been incorporated into Special Instruction No. 7. *See Upjohn Co. v. New Hampshire Ins. Co.*, 476 N.W.2d 392, 400-01 (Mich. 1991).

I recommend that defendant's special instruction no. 9 not be given, because it is irrelevant to this case. Defendant's special instruction no. 9 is derived from Michigan Non-Standard

Jury Instructions, Civil, 17:07.70. This tort instruction states that a corporate agent is required to carry out his duties in light of the information imputed to the corporation, even if the information has not been passed on to the particular agent. That concept, while an accurate statement of Michigan law, is irrelevant to the present dispute. The relevant question is whether the insured knew of or suspected the defect involved in the batch of Uni-Knees before the inception date of the policy. The question whether any particular corporate agent was required to act on such knowledge or suspicion is not material.

Defendant's special instruction no. 10 would inform the jury that knowledge of officers, agents, or employees of a wholly owned corporate subsidiary is imputed to the parent corporation. This is an inaccurate statement of Michigan law. Michigan law presumes that, absent some abuse of corporate forum, parent and subsidiary corporations are separate and distinct entities. *Seasword v. Hilti, Inc.*, 537 N.W.2d 221, 224 (Mich. 1995). The separateness of parent and subsidiary corporations will only be disregarded in circumstances in which a party bears its burden of piercing the corporate veil, by showing that an otherwise separate corporate existence has been used to subvert justice or that the subsidiary has become a "mere instrumentality" of the parent. *Id.* Defendant has not alleged in its pleadings facts, which if true, would allow the court to pierce the corporate veil between Stryker and its subsidiaries.

In support of its instruction, defendant cites Judge Hillman's decision in *CPC Int'l, Inc. v. Aerojet-General Corp.*, 825 F. Supp. 795, 811-12 (W.D. Mich. 1993). Judge Hillman's decision is not contrary to the general rule of Michigan law and does not support defendant's position. In *CPC*, Judge Hillman held a parent corporation liable for acts of a subsidiary "because parent corporation CPC actively participated in and exerted significant control over its wholly-owned

subsidiary Ott II's business and decisionmaking, including specific policy matters such as hazardous waste disposal." 825 F. Supp. at 812. Judge Hillman reached this conclusion only after engaging in a "highly fact-specific inquiry" into the relationship between parent and subsidiary. Consequently, CPC was a specific application of the rule allowing piercing the corporate veil upon a showing of domination by the parent of the subsidiary corporation. Ultimately, in the CPC case, the United States Supreme Court reaffirmed the general principle of corporate law that a parent corporation is legally distinct from its subsidiary and that the corporate forum may only be ignored where the facts warrant piercing the corporate veil. *See United States v. Best Foods*, 524 U.S. 51, 55-56 (1998). Defendant also relies on principles of general agency law, arguing that Stryker's subsidiaries are its agents because Stryker has the right to control them and that the knowledge of the "agent" subsidiaries is imparted to the parent. Defendant cites only cases involving natural persons. Contrary to defendant's contention, the Michigan courts do not apply agency law to impute a subsidiary's knowledge to the parent. Rather, Michigan law requires facts sufficient to pierce the corporate veil. Defendant has cited no law to the contrary. If defendant's argument were accepted, the entire doctrine of corporate separateness would be swallowed up into agency law, and the clearly established requirement of a showing of fraud or instrumentality would disappear.

As neither the pleadings nor the proofs in this case support piercing the corporate veil between Stryker and its subsidiaries, the court is bound to respect the separate corporate forms of the parent and its subsidiaries. Defendant's proposed instruction no. 10 is not an accurate statement of Michigan law and should therefore not be given.

**Recommended Disposition**

I recommend that the court tentatively adopt the attached substantive instructions and special verdict form, subject to revision on the basis of the evidence actually received at trial.

Dated:  October 14, 2005                    /s/  Joseph G. Scoville
                                            United States Magistrate Judge

Attachment 1:  Proposed Instructions
Attachment 2:  Proposed Special Verdict Form

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).