UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


STRYKER CORPORATION, et al.,

      Plaintiffs,

v.

XL INSURANCE AMERICA, formerly
known as WINTERTHUR INTERNATIONAL
AMERICA INSURANCE COMPANY,

      Defendant.
                                       /

File No. 4:01-CV-157

HON. ROBERT HOLMES BELL

## **O P I N I O N**

      This matter is before the Court on Plaintiffs Stryker Corporation and Howmedica Osteonics Corporation's (collectively "Stryker") motion in limine (Docket #703) and Defendant XL Insurance America's ("XLIA") motion in limine to exclude evidence of claims handling (Docket #715). These motions were filed on the eve of trial in September of 2005, however, the Court subsequently adjourned the case without a new trial date. (Sept. 15, 2005 Mem. Op. & Order, Docket #756, at 2.) Following the Court's approval and adoption of the Magistrate Judge's two report and recommendations on July 14, 2006, the Court directed the parties to identify which of the motions in limine remain to be decided. Those notices indicated XLIA's motion as to claims handling and six of the eight issues presented in Stryker's motion in limine remain to be decided. (Ams. to XLIA's Mots. in Limine, Docket #817, at 1; Stryker's Notification Regarding Mots. in Limine, Docket #820, at 2-3.)

This case involves claims by Stryker against XLIA arising from a dispute about an insurance contract. Stryker's original motion in limine presented eight issues. Decisions of the Court subsequent to the original submission of Stryker's motion resolved two issues. First, Stryker sought to have XLIA's objections to the testimony of Daniel Joe Dean overruled. On October 19, 2005, the Court denied XLIA's motion to exclude the testimony of Daniel Joe Dean. (Oct. 19, 2005 Order, Docket #780, at 1.) Second, Stryker sought to preclude XLIA from arguing to the jury that batch coverage applies to products, but not claims and lawsuits. On July 14, 2006, in an opinion adopting and approving the report and recommendations of the Magistrate Judge the Court held that batch coverage applies to products, not just claims and lawsuits. (July 14, 2006 Op., Docket #814, at 7-9.) As these issues have been resolved, these two components of Stryker's motion are denied as moot. The Court will now address the six components of Stryker's motion in limine that remain unresolved.

**I.     Claims Handling and the Deposition Testimony of Peter Duncan**

The first unresolved issue of Stryker's motion in limine is whether the deposition testimony of Peter Duncan is admissible. Mr. Duncan's testimony largely relates to questions of XLIA's claims handling. Therefore, the Court will consider XLIA's motion to exclude evidence of claims handling in conjunction with this part of Stryker's motion.

### A.     Claims Handling

XLIA argues that evidence of its claims handling is inadmissible because such evidence is not relevant to the issues in this declaratory judgment and breach of contract suit. The issues in this case encompass whether XLIA is obligated to provide defense and indemnity to Stryker for the underlying litigation related to Duracon Uni-Knees ("Uni-Knees") sold by Stryker. XLIA argues that this case presents a question of pure contract interpretation and does not extend to "extra-contractual claims," such as bad faith or wrongful claims handling. (XLIA's Mem. in Supp. of Mot. to Exclude Claims Handling, Docket #715, at 1-2.) Further, XLIA contends that because there is no dispute that it denied coverage based on the Medical Products Endorsement, evidence of its claims handling is not relevant to the disposition of this case.

Stryker argues that because the Court has ruled that the coverage provision of the Medical Products Endorsement is ambiguous and a question of fact for the jury, evidence of how XLIA handled previous claims is relevant to the interpretation of the contract. Stryker also contends that XLIA is seeking to exclude a letter from Peter Duncan, XLIA's Senior Claims Examiner.[1] (Letter from Peter Duncan to Curtis Hall, Stryker's Resp. to XLIA's Claims Handling Mot., Docket #743, Ex. B.) Stryker contends that the letter is relevant to

---

[1] Stryker also suggests that XLIA's motion may be directed at the exclusion of the testimony of Daniel Joe Dean. However, the Court previously ruled the testimony of Mr. Dean admissible and no argument made in relation to this motion has given the Court reason to reconsider its prior ruling. (*See* Oct. 19, 2005 Order, Docket #780, at 1.)

showing that XLIA was predisposed to denying coverage and was looking for reasons to deny the claim. Further, Stryker argues that the letter is relevant to the interpretation of the policy provision excluding coverage if Stryker knew or suspected the defect prior to January 1, 2000.

Two of the questions presented to the jury on the special verdict form involve interpretations of the insurance contract. (Special Verdict Form, Questions 1, 3, Oct. 14, 2005 Report & Recommendation, Docket #777, Attach. 2, *approved and adopted by* July 14, 2006 Order, Docket #814.) With respect to these two questions, evidence of XLIA's claims handling is relevant to ascertaining the intent of the parties, which is the primary objective of contract interpretation under Michigan law. *City of Grosse Pointe Park v. Mich. Mun. Liab. & Prop. Pool*, 473 Mich. 188, 197, 702 N.W.2d 106 (2005) ("'The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties. To this rule all others are subordinate.'" (quoting *McIntosh v Groomes*, 227 Mich. 215, 218, 198 N.W. 954 (1924))). Additionally, XLIA's claims handling is a permissible means of ascertaining the intent of the parties to the extent it reveals prior interpretations of the contract language. *See Klapp v. United Ins. Group Agency*, 468 Mich. 459, 480, 663 N.W.2d 447 (2003) ("That the drafting party interpreted the ambiguous contractual language in a certain way for many years is relevant extrinsic evidence."). The Court has previously determined that the insurance policy is ambiguous with respect to questions one and three on the special verdict form. When a contract is ambiguous Michigan law permits recourse to "'evidence of practical

4

interpretation by the parties . . . as an aid in the determination of the meaning to be given legal effect.'" *Klapp*, 468 Mich. at 478 (quoting *Davis v Kramer Bros Freight Lines, Inc,*, 361 Mich. 371, 375, 105 N.W.2d 29 (1960)).  Therefore, evidence of claims handling is permitted by Michigan contract law.

Evidence of claims handling is also relevant under the Federal Rules of Evidence. Evidence of claims handling is relevant because prior instances when the contract language at issue was interpreted in a particular way is indicative of the intent of the parties. *See* FED. R. EVID. 401.  This does not mean that all claims handling will be admissible, as each particular document or portion of testimony must be relevant.  Additionally, such evidence will still need to comply with the other applicable provisions of the Federal Rules of Evidence, e.g., hearsay.  Thus, evidence of claims handling is relevant, including the letter from Peter Duncan to Curtis Hall.

Stryker also seeks to admit claims handling evidence to show that XLIA "was looking for reasons to deny the claim."  (Stryker's Resp. to XLIA's Claims Handling Mot. 2.) Stryker's complaint does not include any claims based on bad faith or wrongful handling of the insurance claim by XLIA.  (Am. Compl., Docket #39, at 5-7 (seeking a declaratory judgment that XLIA has a duty to defend and to indemnify and alleging a breach of contract).)  In the absence of a bad faith type claim, evidence that XLIA "was looking for reasons to deny the claim" is irrelevant.  The intent of XLIA in taking other actions is not probative of the meaning of the contract or of any other question that will be before the jury.

5

*See* FED. R. EVID. 401. Claims handling evidence which Stryker seeks to admit to show that XLIA "was looking for reasons to deny the claim" is irrelevant and therefore inadmissible. FED. R. EVID. 402.

Therefore, XLIA's motion in limine is denied in part with respect to evidence of claims handling that is related to the prior interpretation of the contract by the parties. Evidence of claims handling that goes to prior contract interpretation by the parties and that otherwise complies with the Federal Rules of Evidence will be admissible. XLIA's motion in limine is granted in part with respect to evidence that would be admitted to show that XLIA "was looking for reasons to deny the claim."

### B.  Deposition Testimony of Peter Duncan

Related to the general question of claims handling is the admissibility of the deposition testimony of Peter Duncan. Stryker seeks to have the Court rule that the deposition testimony of Mr. Duncan is admissible. Mr. Duncan was a Senior Claims Examiner with XLIA and he wrote the October 11, 2001, letter from XLIA to Stryker denying coverage. Mr. Duncan is no longer employed by Stryker. Stryker has indicated, without contrary statement from XLIA, that Mr. Duncan's whereabouts are unknown and that he is unavailable to testify.

Stryker argues that Mr. Duncan's testimony is relevant because of his role in the decision of XLIA to deny coverage. Specifically, Stryker contends that Mr. Duncan's testimony will show that XLIA did not undertake a thoughtful and comprehensive review of

6

its obligations before denying coverage. Further, Stryker argues that the testimony is not prejudicial or misleading.

XLIA contends that Mr. Duncan's testimony is irrelevant to the contract issues presented in this case for the same reasons that XLIA argued that evidence of claims handling was irrelevant. In addition to the general objection to Mr. Duncan's deposition, XLIA objects to the following specific sections of Mr. Duncan's deposition:

> 32:1-5, 32:22-25, 33:1-5, 33:13-18, 34:2, 34:12-21, 35:23, 38:22-25, 39:1-7, 39:18-19, 65:11-12, 65:19-20, 107:18-25, 108:16-17, 108:21-24, 109:7-8, 111:1-3, 111:20-21, 111:25, 112:1-11, 112:22, 115:19-20, 116:25, 117:1-4, 117:16-17

(Stryker's Mot. in Limine, Docket #703, Ex. A, at 3.) XLIA contends that the sections of the deposition to which it specifically objects are Mr. Duncan declining to answer based on the advice of counsel. From this, XLIA argues that Mr. Duncan's refusal to answer is irrelevant to the question of contract interpretation that will be before the jury. XLIA further argues that even if Mr. Duncan's testimony was relevant, its probative value is outweighed by the danger of unfair prejudice.

Evidence must "make the existence of any fact that is of consequence to the determination of the action more probable or less probable" in order for the evidence to be admissible. FED. R. EVID. 401, 402. "The fact to which the evidence is directed need not be in dispute." FED. R. EVID. 401, Adv. Comm. Notes (1972). Portions of Mr. Duncan's deposition provide background information about the policy and the fact that XLIA denied coverage. Though this information is largely not in dispute, it is admissible background

7

information.  *See* FED. R. EVID. 401, Adv. Comm. Notes (1972) ("Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is universally offered and admitted as an aid to understanding.").  Therefore, the Court rejects XLIA's contention that Mr. Duncan's deposition is irrelevant in its entirety.

Next the Court considers XLIA's objections to specific portions of Mr. Duncan's deposition.  Each of the sections to which XLIA objects as irrelevant is an exchange in which a question was posed to Mr. Duncan, XLIA's counsel at the deposition advised him regarding attorney-client privilege or related doctrines, and then Mr. Duncan declined to answer based on the advice of counsel.  (Duncan Dep., Stryker's Mot. in Limine, Ex. A.)  The Court has previously overruled XLIA's objections that were made during Mr. Duncan's deposition.  (Jan. 1, 2004 Hr.'g Tr., Docket #445, at 19:10-16.)  After overruling XLIA's objections the Court declined to order a second deposition of Mr. Duncan in part because the questions to which XLIA objected lacked substantive value.  (*Id.* at 19:14-25.)  The fact that XLIA's counsel improperly advised Mr. Duncan about attorney-client privilege does not mean that the questions, the answers or the lack thereof are automatically relevant.  Moreover, Mr. Duncan's refusal to answer based on the advice of counsel does not have a tendency to make it more or less probable that any particular interpretation of the insurance contract is correct.  *See* FED. R. EVID. 401.

Stryker argues that Mr. Duncan's testimony is relevant because his refusals to answer are indicative of XLIA not having engaged in a thorough review of Stryker's claim before

8

deciding to deny the claim. This is essentially the same as Stryker's efforts to admit evidence that XLIA "was looking for reasons to deny the claim," which the Court discussed above. *See supra* Part I.A. Applying the Court's earlier reasoning to the sections of Mr. Duncan's deposition to which XLIA specifically objects requires the exclusion of those sections of the deposition. The sections of Mr. Duncan's deposition to which XLIA has objected are inadmissible as irrelevant. Having found the specified sections of the deposition irrelevant the Court need not reach the question of unfair prejudice.

Therefore, Stryker's motion in limine is granted in part with respect to the general relevance of Mr. Duncan's deposition testimony. Stryker's motion in limine is denied in part with respect to the specific section of Mr. Duncan's deposition testimony to which XLIA objected.

## II. Deposition Testimony of Dyanne Diemer-Kashuba and the Memorandum She Prepared

The Court has reviewed the parties briefs as to the deposition testimony of Dyanne Diemer-Kashuba and the memorandum she prepared and has determined that oral argument will be necessary on this component of Stryker's motion in limine.

## III. Deposition Testimony of Jadwiga Degrado

Stryker contends that the portions of the deposition testimony of Jadwiga Degrado that XLIA seeks to offer into evidence should be excluded. Ms. Degrado was an employee of Howmedica Osteonics in their product surveillance department. The Court has carefully considered Ms. Degrado's deposition and what it will contribute to the case. Upon reviewing

9

Stryker's objections based on the Federal Rules of Evidence the Court has made the following determinations:

**Jadwiga Degrado, Deposition, August 12, 2003**

119:1-12 - Objection as to relevance - OVERRULED

164:3-166:18, 167:9-168:12, 169:15-171:4 - Objection as to relevance - OVERRULED

183:17-184:5 - Objection as to relevance - OVERRULED

186:8-187:17, 187:20-190:8 - Objection as to relevance - SUSTAINED

191:21-195:14, 195:19-196:6, 200:4-6 - Objection as to relevance - OVERRULED

202:14-201:1, 203:18-207:20, 209:9-15 - Objection as to relevance - OVERRULED

214:13-215:12 - Objection as to foundation - OVERRULED as waived;[2] Objection as to relevance - OVERRULED; Objection as to hearsay - OVERRULED

215:21-216:2 - Objection as to foundation - OVERRULED as waived; Objection as to relevance - OVERRULED

---

[2]"Fed. R. Civ. P. 32(d)(3)(A) provides that 'objections . . . to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time.' . . . What the exception obviously envisions is a situation in which a timely objection (*e.g., on the ground of failure to lay an adequate foundation*, see *Nutterville v. McLam*, 84 Idaho 36, 367 P.2d 576 (1961)) could have enabled the problem to be remedied so that the same testimony could be received in accordance with law." *Jordan v. Medley*, 711 F.2d 211, 217-18 (D.C. Cir. 1983) (emphasis added).

216:9-217:5 - Objection as to foundation - OVERRULED as waived; Objection as to hearsay - OVERRULED; Objection as to relevance - OVERRULED

221:1-15 - Objection as to foundation - SUSTAINED; Objection as to relevance - OVERRULED

221:18-222:11 - Objection as to foundation - SUSTAINED

224:7-225:9 - Objection as to foundation - SUSTAINED; Objection as to hearsay - OVERRULED

225:10-227:2 - Objection as to foundation - OVERRULED as waived; Objection as to hearsay - OVERRULED

235:1-236:10 - Objection as to foundation - OVERRULED as waived; Objection as to relevance - OVERRULED; Objection as to hearsay - OVERRULED

240:24-241:12 - Objection as to foundation - OVERRULED as waived

276:4-277:5, 277:10-13, 277:16-21 - Objection as to foundation - SUSTAINED; Objection as to relevance - SUSTAINED; Objection as to hearsay - SUSTAINED

280:11-19 - Objection as to foundation - OVERRULED as waived; Objection as to relevance - SUSTAINED; Objection as to hearsay - OVERRULED

280:24-281:5 - Objection as to foundation - OVERRULED as waived; Objection as relevance - OVERRULED; Objection as to hearsay - OVERRULED

**IV.  Alternative Methods of Sterilization**

The Uni-Knees at issue in this case were gamma-irradiated and packaged in air. Stryker also examined other methods of sterilization and packaging, including vacuum-sealing and storage in nitrogen. Stryker contends that Rule 407 of the Federal Rules of

Evidence precludes XLIA from introducing evidence of the alternative methods of sterilization. Stryker argues that XLIA will use the alternative storage methods to demonstrate that gamma irradiation and storage in air was defective.

XLIA contends that Rule 407 only bars evidence when offered to prove negligence or culpable conduct and that it is not applicable to the issues of contract interpretation presented in this case. Further, XLIA contends that it will offer the alternative sterilization methods to prove that Stryker had knowledge of the defect prior to the inception of the XLIA policy, not to prove a defect in the product. Thus, XLIA contends this evidence is not within Rule 407.

> Rule 407 provides:
>
> When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

FED. R. EVID. 407.

The text of Rule 407 does not suggest that the rule is limited to cases involving questions of negligence or culpable conduct. Additionally, Rule 407 is based on "a social policy of encouraging people to take, or at least not discouraging them from taking, steps in furtherance of added safety." FED. R. EVID. 407, Adv. Comm. Notes (1972). Thus, neither

the text nor the policy of Rule 407 supports XLIA's contention that Rule 407 is inapplicable to this case.

The Uni-Knees manufactured by Stryker contained ultra high molecular weight polyethylene (UHMWPE). In the mid-1990s studies suggested that gamma irradiated UHMWPE that was stored in air was subject to oxidation. Alternative methods of sterilization were developed in response to the concerns about oxidation. (Dumbleton Aff. ¶19, Pl.'s Br. in Resp. to XLIA's Mot. for Summ. J., Docket #590, Vol. H., Ex. 1.) The alternative sterilization methods are subsequent measures taken in response to harm allegedly caused by an event - the oxidation. The alternative methods of sterilization developed by Stryker are clearly within the first sentence of Rule 407.

XLIA argues that the evidence is being offered for an alternative purpose and is therefore admissible under the second sentence of Rule 407. XLIA asserts that the evidence is being offered to show Stryker's knowledge of the defect in the Uni-Knees prior to the policy period. The Court has previously determined that as a matter of law the defect is defined as the "Uni-Knees were available in inventory for implantation by physicians after the expiration of their shelf life." (July 14, 2006 Op. 9.) Under this definition of the defect, the defect involves questions about the tracking and monitoring of Uni-Knees in relation to their expiration dates, not knowledge about the effects of irradiation on UHMWPE. As the alternative methods of sterilization are not admissible for another purpose, the alternative methods of sterilization are inadmissible under Rule 407. Therefore, Stryker's motion in

13

limine is granted in part as to the inadmissibility of alternative methods of sterilization based on Rule 407.

## V.     Constructive Knowledge of the Defect by Virtue of Information Contained in Howmedica, Inc. Documents

The Court has reviewed the parties' briefs as to evidence of Stryker's constructive knowledge of the defect by virtue of information contained in Howmedica, Inc. documents and has determined that oral argument will be necessary on this component of Stryker's motion in limine.

## VI.    Stryker's Alleged Negligence, Dismissal of National Union and *Pfizer v. Stryker*

Stryker contends that XLIA may refer to the dismissal of National Union from this case. Stryker argues that the dismissal is irrelevant. Similarly, Stryker also contends that the *Pfizer v. Stryker* lawsuit pending in the Southern District of New York is also irrelevant. XLIA concedes that reference to National Union or the *Pfizer* lawsuit is inappropriate and does not challenge this portion of the motion. Neither the dismissal of National Union from this suit nor the suit captioned, *Pfizer v. Stryker*, pending in the Southern District of New York, is relevant to the questions that will be before the jury. Therefore, this portion of Stryker's motion is granted.

Finally, Stryker argues that XLIA should be precluded from developing testimony or suggesting that Stryker was negligent in its handling of the Uni-Knees. Stryker contends that its negligence is not relevant to the questions that will be before the jury. However, XLIA contends that Stryker's attempt to limit reference to Stryker's negligence is overbroad.

14

Further, XLIA argues that Stryker's argument is inconsistent because Stryker has previously asserted that it did not discover the defective Uni-Knees because of a failure in their inventory system.

Stryker's brief clarifies that by evidence of negligence, Stryker means evidence intended to show that Stryker "should have done more." (Stryker's Mot. in Limine 22.) The Court construes this portion of Stryker's motion to be a request to exclude evidence of negligence within that terms legal meaning: "The failure to exercise the standard of care that a reasonably prudent person would have exercised in a similar situation; any conduct that falls below the legal standard established to protect others against unreasonable risk of harm, except for conduct that is intentionally, wantonly, or willfully disregardful of others' rights." BLACK'S LAW DICTIONARY 1061 (8th ed. 2004). XLIA's response brief did not address this narrower argument.

Of the questions that will be before the jury the question that most directly involves Stryker's conduct as it relates to what events permitted the implantation of expired Uni-Knees is, "did Plaintiffs know or suspect of the defect or deficiency in the Duracon Uni-Knees before January 1, 2000?" (Special Verdict Form 3.) Whether Stryker failed to exercise the standard of care that a reasonably prudent person would have exercised in tracking the Uni-Knees is not relevant to the question of whether Stryker knew or suspected the defect in the Uni-Knees prior to January 1, 2000. FED. R. EVID. 401. Therefore, the Court grants Stryker's motion as to the inadmissibility of evidence that Stryker should have made a greater effort

15

to track the Uni-Knees. The Court denies Stryker's motion as to the more general request to exclude evidence of negligence. A general exclusion of evidence of negligence would exclude relevant evidence about the events that permitted the Uni-Knees to remain available for implantation after their expiration. (*See* Stryker's Trial Br., Docket #731, at 5 ("After an investigation was completed in the summer of 2000, [Howmedica Osteonics] concluded that the Duracon Uni-Knees had accidentally not been inputted into the inventory tracking system.").)

## **CONCLUSION**

For the foregoing reasons, the XLIA's motion in limine to exclude evidence of claims handling is granted in part and denied in part. Stryker's motion in limine is granted in part, denied in part, held in abeyance in part and denied as moot in part, as set forth in this opinion. An order will be entered consistent with this opinion.


Date:   January 8, 2007            /s/ Robert Holmes Bell
                                   ROBERT HOLMES BELL
                                   CHIEF UNITED STATES DISTRICT JUDGE