UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STRYKER CORPORATION, et al.,

        Plaintiffs,

                                            File No. 4:01-CV-157

v.

                                            HON. ROBERT HOLMES BELL

XL INSURANCE AMERICA, formerly
known as WINTERTHUR INTERNATIONAL
AMERICA INSURANCE COMPANY,

        Defendant.
_____/

**O P I N I O N**

      This matter is before the Court on Plaintiffs Stryker Corporation and Howmedica Osteonics Corporation's (collectively "Stryker") motion in limine (Docket #703). This motion was originally filed on the eve of trial in September of 2005, however, the Court subsequently adjourned the case without a new trial date. (Sept. 15, 2005 Mem. Op. & Order, Docket #756, at 2.) Of the eight issues originally presented by Stryker's motion, only two remain unresolved. Two of the issues were resolved by the Court's July 14, 2006, opinion, which resolved certain substantive issues on summary judgment. Four more issues were resolved by the Court's January 9, 2007, opinion. The first unresolved issue is whether Dyanne Diemer Kashuba's depositions and a memorandum she drafted are admissible. The second unresolved issue is whether XL Insurance America ("XLIA") may argue that Stryker had constructive knowledge of the defect. For the reasons that follow, Stryker's motion is

granted in part as to Dyanne Diemer Kashuba's deposition in the *Bartlett* case, denied in part as to Dyanne Diemer Kashuba's deposition in the *Orrik* case and the memorandum she drafted, and denied in part as moot as to constructive knowledge.

**I.**

The Duracon Uni-Knees ("Uni-Knees") were a line of artificial implantable knees manufactured by Howmedica Inc., a subsidiary of Pfizer Inc. From 1997 until December 4, 1998, Howmedica Inc. sold the Uni-Knees in the United States. On December 4, 1998, Stryker acquired certain assets of Howmedica Inc., including the Uni-Knees remaining in inventory. On December 31, 1998, the two subsidiaries of Stryker that had acquired the assets of Howmedica Inc. were merged into Osteonics Corp., a subsidiary of Stryker Corporation. Osteonics Corp. then changed its name to Howmedica Osteonics Corp.

The Uni-Knees were sterilized using gamma irradiation. One consequence of the gamma irradiation was that the Ultrahigh Molecular Weight Polyethylene (UHMWPE) in the Uni-Knees would oxidize while exposed to air. Howmedica Inc. determined that despite the effects of the oxidation, the Uni-Knees remained safe for implantation up to five years after they were irradiated. Howmedica Inc. thereafter established a policy that Uni-Knees should not be implanted more than five years after being irradiated. In furtherance of this policy Howmedica Inc. established a database to track products containing UHMWPE, however, the Uni-Knees were never entered into this database.

XLIA issued Stryker an insurance policy that had a policy period of January 1, 2000, through January 1, 2001. The policy issued by XLIA provides that "coverage shall not apply to any loss, which arises out of a defect, or deficiency that is known or suspected prior to 1-1-00." (Definition of Occurrence - Med. Prods. Endorsement.) The Court previously determined that as a matter of law the defect is defined as the "Uni-Knees were available in inventory for implantation by physicians after the expiration of their shelf life." (July 14, 2006 Op., Docket #813, at 9.)

## II.

### A. The Admissibility of Dyanne Diemer Kashuba's Depositions

XLIA has designated sections of Dyanne Diemer Kashuba's deposition that was taken on May 7, 2002, in the underlying case of *Orrik v. Stryker Corporation*. (XLIA's Dep. Excerpts, Corr. Proposed Pretrial Order, Docket # 844, Ex. I; Kashuba Dep., Pls.' Br. in Resp. to XL's Mot. for Summ. J. on Coverage, Docket #590, Vol. G, Ex. 7.) Stryker makes three objections to the admission of Ms. Kashuba's deposition in the *Orrik* case. First, Stryker contends that Ms. Kashuba's deposition is irrelevant because she was never employed by Howmedica Osteonics or Stryker Corporation. Second, Stryker contends that XLIA has not established that Ms. Kashuba is unavailable. Third, Stryker contends that it did not have a similar motive to cross-examine Ms. Kashuba during the deposition in the *Orrik* case. In the event that the Court finds Ms. Kashuba's deposition in the *Orrik* case admissible, Stryker seeks to have portions of Ms. Kashuba's deposition in the *Bartlett v. Stryker* case admitted.

3

In order for Ms. Kashuba's deposition in the *Orrik* case to be relevant it must "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Although Ms. Kashuba was never employed by Stryker, she was the product manager for the Uni-Knees while she was employed by Howmedica Inc. Therefore, Ms. Kashuba's actions implicate the knowledge of the Howmedica Inc. employees who transferred to Howmedica Osteonics and the tracking systems in place at Howmedica Inc. The knowledge of Howmedica Osteonics employees and the tracking system in place at Howmedica Inc. is of consequence to the determination of questions three and four on the special verdict form. (*See* Special Verdict Form, Questions 3, 4, Oct. 14, 2005 Report & Recommendation, Docket #777, Attach. 2, *approved and adopted by* July 14, 2006 Order, Docket #814.) Therefore Ms. Kashuba's deposition in the *Orrik* case is relevant.

Stryker also argues that Ms. Kashuba's deposition in the *Orrik* case is not within the former testimony hearsay exception of Rule 804(b)(1) of the Federal Rules of Evidence. Stryker contends that XLIA has not shown that it made a good faith attempt to secure Ms. Kashuba's live testimony. XLIA argues that Ms. Kashuba is unavailable under Rule 804(a)(5), which applies when the person "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means." FED. R. EVID. 804(a)(5). As the proponent of Ms. Kashuba's deposition XLIA has the burden of establishing her unavailability. *Kirk v. Raymark Indus., Inc.*, 61 F.3d

4

147, 165 (3d Cir. 1995). At oral argument XLIA indicated that Ms. Kashuba is believed to currently reside in New Jersey and so she is outside the subpoena power of the Court. FED. R. CIV. P. 45(b)(2). Stryker does not dispute that Ms. Kashuba is outside the Court's subpoena power.

However, Stryker contends that XLIA has failed to use reasonable means in attempting to obtain Ms. Kashuba's live testimony. At oral argument on this motion XLIA provided an affidavit from James W. Walker, former counsel for XLIA. Mr. Walker's affidavit indicates that he contacted Ms. Kashuba on September 14, 2005. Ms. Kashuba indicated that she would refuse to testify at any future trials related to the Uni-Knees and that she would not voluntarily appear at trial. (Jan. 9, 2007 Walker Aff. ¶3.) Stryker contends that in addition to the affidavit indicating Ms. Kashuba's refusal, XLIA should have sought to depose Ms. Kashuba. However, "[t]he rule contains no requirement that an attempt be made to take the deposition of a declarant." FED. R. EVID. 804, Adv. Comm. Notes (1972). The Court finds that XLIA used reasonable means in attempting to obtain Ms. Kashuba's live testimony and Ms. Kashuba is unavailable for the purposes of Rule 804.

In order to be admissible under Rule 804(b)(1), Stryker must have had an "opportunity and a similar motive to develop the testimony by direct, cross, or redirect examination." FED. R. EVID. 804(b)(1). Stryker argues that during the *Orrik* case it did not have a similar motive to develop Ms. Kashuba's testimony. Stryker had a similar motive to develop Ms. Kashuba's testimony during the *Orrik* case because one of the claims asserted in the *Orrik* case was a

5

gross negligence claim alleging that Stryker had knowledge of the effects of gamma irradiation on the Uni-Knees and that Stryker failed to recall the Uni-Knees. This claim gave Stryker a motive to develop Ms. Kashuba's testimony as to the system that was supposed to track the Uni-Knees and the events that led to the Uni-Knees being omitted from the tracking system.

Stryker responds by directing the Court to the deposition of Ms. Kashuba in the *Bartlett v. Stryker* case. (Kashuba Dep. - *Bartlett* case, Stryker's Br. Supporting Mot. in Limine, Docket #706, Ex. B.) Ms. Kashuba's deposition in the *Bartlett* case indicates that she believed that a system was in place to track the Uni-Knees and that it would flag individual Uni-Knees when they expired. Stryker contends that the absence of equivalent testimony in the *Orrik* deposition indicates that it did not have a similar motive in the *Orrik* case. First, a parties' failure to develop testimony does not necessarily mean that it did not have a motive to develop the testimony. Second, in the *Orrik* case Stryker had a motive to develop testimony about the tracking of the Uni-Knees because the gross negligence claim included allegations that Stryker had failed to recall the Uni-Knees. Thus, Stryker had a motive to develop testimony about the safety measures associated with the gamma irradiation of the Uni-Knees. *See Shanklin v. Norfolk S. Ry.*, 369 F.3d 978, 990-91 (6th Cir. 2004) (finding a "similar motive" for purposes of Rule 804(b)(1) when the prior case involved the same general safety issue). The Court therefore finds that the May 7, 2002, deposition testimony of Dyanne Diemer Kashuba in the *Orrik* case is admissible under Rule 804(b)(1).

Having determined that Ms. Kashuba's testimony is admissible under Rule 804, the Court need not address XLIA's alternative argument that Ms. Kashuba's deposition in the *Orrik* case is admissible under Rule 807.

The Court next considers Stryker's request to have sections of Ms. Kashuba's deposition in the *Bartlett* case admitted.  As the Court has already determined that Ms. Kashuba is unavailable, the admissibility under Rule 804(b)(1) of the deposition in the *Bartlett* case depends on whether XLIA had a predecessor in interest in the *Bartlett* case, as XLIA was not a party to the *Bartlett* case.  Stryker was not a predecessor in interest to XLIA in the *Bartlett* case, though there would have been some alignment of interest between Stryker as a defendant in an underlying lawsuit and XLIA.  The only other potential predecessor in interest in the *Bartlett* case would have been the individuals who had sustained injuries as a result of the Uni-Knees.  Stryker does not contend that such individuals were predecessors in interest to XLIA.  XLIA did not have an opportunity to cross-examine Ms. Kashuba in the *Bartlett* case as XLIA was not a party to the *Bartlett* case and did not have a predecessor in interest in the *Bartlett* case, so the testimony of Ms. Kashuba from the *Bartlett* case is not admissible under Rule 804(b)(1).

If a statement is not admissible under by Rule 804, it may still be admissible under Rule 807.  *United States v. Laster*, 258 F.3d 525, 530 (6th Cir. 2001).  Rule 807 requires that:

> the evidence (1) has equivalent circumstantial guarantees of trustworthiness as evidence admitted under Rules 803 and 804;  (2) goes to a material fact; and (3) is more probative than any other evidence that reasonably could have been

procured. Finally, (4) the admission of the evidence must support the general purposes of the Rules of Evidence and the interests of justice.

*United States v. Jamieson*, 427 F.3d 394, 411 (6th Cir. 2005). Ms. Kashuba's deposition in the *Bartlett* case offers guarantees of trustworthiness equivalent to hearsay admitted under Rule 804 because Ms. Kashuba's deposition was taken as part of a prior case. Ms. Kashuba's testimony goes to a material fact because it involves her knowledge about the system Howmedica Inc. had in place to track the Uni-Knees. (Kashuba Dep. - *Bartlett* Case, 30:7-31:9.) Ms. Kashuba was the product manager responsible for the Uni-Knees at Howmedica Inc., so there is no other more probative evidence that could have been procured. The Court finds that admission of this evidence supports the general purpose of the Rules of Evidence as it is reliable evidence that almost conforms to the requirements of Rule 804. Finally, the Court finds that the admission of this evidence is in the interest of justice because the combination of the deposition in the *Bartlett* case with the deposition in the *Orrik* case provides the best overall representation of Ms. Kashuba's testimony, given that she is unavailable to testify at trial. The Court finds Ms. Kashuba's deposition in the *Bartlett* case is admissible hearsay under Rule 807.

### B. The Memorandum Referred to as the "Diemer Memo"

In order for the October 28, 1997, memorandum Ms. Kashuba wrote (the "Diemer Memo") to be relevant, it must "make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Stryker contends that it did not have a copy of the Diemer

Memo until 2002, when it was produced by Pfizer Inc. in one of the underlying cases. Stryker argues that based on when it received the Diemer Memo, it could not have had knowledge based on the memorandum prior to January 1, 2000, and therefore the Diemer Memo is irrelevant. The Diemer Memo was sent to other Howmedica Inc. employees to advise them that there would be a need to order more Uni Inserts because "**all** of the inserts will be outdated **May 1998**."  (Diemer Memo, Stryker's Br. Supporting Mot. in Limine, Ex. C. (emphasis in original))  Though Stryker may not have had a copy of the Diemer Memo until 2002, employees of Howmedica Inc. who transferred to Stryker may have seen the memorandum while they were employed by Howmedica Inc. The Diemer Memo is probative of the knowledge of employees who transferred to Stryker from Howmedica Inc.

Stryker also argues that the Diemer Memo is hearsay.  However, the Diemer Memo is not being introduced to show that in fact all inserts were outdated in May of 1998.  Instead the Diemer Memo is being offered to show that Howmedica Inc. employees had notice that the inserts would be outdated in May of 1998. As used for this purpose, the Diemer Memo is not hearsay.  The Court finds that the Diemer Memo is relevant and that it is not hearsay, however, to be admitted XLIA will need to establish that the Diemer Memo otherwise complies with the Federal Rules of Evidence.[1]  Therefore, Stryker's motion is denied in part as to the Diemer Memo.

---

[1] At oral argument Stryker argued that the Diemer Memo could not be authenticated. Whether a foundation can be laid for the admission of the Diemer Memo is an issue properly reserved for trial.

9

**C. The Admissibility of Evidence that Stryker had Constructive Knowledge of the Defect Based on Howmedica Inc. Documents**

Stryker contends that XLIA should be precluded from arguing that Stryker had constructive knowledge of the defect based on Howmedica Inc. documents. During oral argument on this motion XLIA indicated that it did not intend to present a theory of constructive knowledge at trial. Based on this statement by XLIA, Stryker acknowledged that this portion of the motion was moot. Therefore, Stryker's motion is denied as moot as to the admissibility of evidence that Stryker had constructive knowledge based on Howmedica Inc. documents.

### III.

For the foregoing reasons, Stryker's motion is granted in part as to Dyanne Diemer Kashuba's deposition testimony in the *Bartlett* case, denied in part as to Dyanne Diemer Kashuba's deposition testimony in the *Orrik* case and the Diemer Memo, and denied in part as moot as to evidence that Stryker had constructive knowledge based on Howmedica Inc. documents. An order will be entered consistent with this opinion.

Date:  January 18, 2007        /s/ Robert Holmes Bell
                               ROBERT HOLMES BELL
                               CHIEF UNITED STATES DISTRICT JUDGE