UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


STRYKER CORPORATION, et al.,

       Plaintiffs,

v.

XL INSURANCE AMERICA, formerly
known as WINTERTHUR INTERNATIONAL
AMERICA INSURANCE COMPANY,

       Defendant.
_____/

File No. 4:01-CV-157

HON. ROBERT HOLMES BELL

# O P I N I O N

      This matter is before the Court on Plaintiffs Stryker Corporation and Howmedica Osteonics Corporation's (collectively "Stryker") motion requesting pretrial rulings on evidentiary objections (Docket #820). This matter is also before the Court on Defendant XL Insurance America's ("XLIA") motion requesting pretrial rulings on evidentiary objections (Docket #724), as modified by XLIA's amendments to its motion in limine (Docket #817). Stryker's objections to XLIA's exhibits are set forth in Stryker's notice regarding objections to XLIA's exhibits (Docket #848) and the proposed pretrial order (Docket #843). XLIA's objections to Stryker's exhibits are set forth in XLIA's brief in support of its request for pretrial evidentiary rulings (Docket #725) and the proposed pretrial order (Docket #843). On January 9, 2007, pursuant to the Court's order, the parties filed copies of the exhibits for

which pretrial evidentiary rulings are sought. On January 16, 2007, the parties filed briefs responding to the specific objections that had been made.

The issues in this case encompass whether XLIA is obligated to provide defense and indemnity to Stryker for the underlying litigation related to Duracon Uni-Knees ("Uni-Knees") sold by Stryker.

## I. Stryker's Objections to XLIA's Exhibits

### A. Affidavit of David Reid - Exhibit 482/W10[1]

Stryker objects to the affidavit of David Reid, who is the Assistant Secretary of Pfizer Inc. (Reid Aff., XLIA's Notice, Docket #848, Ex. C.) A series of documents are attached to Mr. Reid's affidavit, bates numbered MTG 07521-07529. XLIA seeks to use Mr. Reid's affidavit to authenticate the documents attached to Mr. Reid's affidavit pursuant to Rule 902(11) of the Federal Rules of Evidence. A domestic business record is self-authenticating,

> if accompanied by a written declaration of its custodian or other qualified person . . . certifying that the record – (A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; (B) was kept in the course of the regularly conducted activity; and (C) was made by the regularly conducted activity as a regular practice.

FED. R. EVID. 902(11). Mr. Reid's affidavit does not make certifications as to these three requirements. Therefore, Mr. Reid's affidavit does not authenticate the attached documents.

---

[1] At the final pretrial conference the Court directed XLIA to renumber its exhibits using letters and numbers. This opinion references both the old numbers and the new numbers.

In response XLIA directs the Court to Rule 102 and Rule 807.  XLIA argues that Mr. Reid's affidavit complies with Rule 807 and that finding the documents attached to the affidavit admissible would further the purposes recognized by Rule 102.  XLIA's response fails to distinguish between the authentication requirement of Rule 901 and the admissibility of hearsay.  *See* FED. R. EVID. 901, Adv. Comm. Notes (1972) ("It should be observed that compliance with requirements of authentication or identification by no means assures admission of an item into evidence, as other bars, hearsay for example, may remain.").  Though Rule 803(6) allows hearsay to be admitted if it has been authenticated pursuant to Rule 902(11) or Rule 902(12), there is no rule providing for the converse - that evidence found to be admissible hearsay is thereby authenticated.  Therefore, Rule 807 does not alter the fact that Mr. Reid's affidavit does not authenticate the attached documents under Rule 902(11).  Stryker's objection to exhibit 482/W10 as to authentication is sustained.

### B.  Diemer Memo - Exhibits 216/Q and 396/O7

Stryker objects to the Diemer Memo as inadmissible hearsay, irrelevant and unauthenticated.  Stryker's objections as to hearsay and irrelevance were overruled as part of the Court's January 18, 2007, opinion. (Jan. 18, 2007 Op., Docket #865, at 8-9.)  Stryker argues that the Diemer Memo cannot be authenticated based on the affidavit of David Reid.  The Diemer Memo is one of the documents that is attached to Mr. Reid's affidavit.  As the Court has explained, Mr. Reid's affidavit does not contain the certifications necessary to authenticate a document pursuant to Rule 902(11).  *See supra* Part I.A.  Therefore the Diemer

Memo cannot be authenticated based on Mr. Reid's affidavit. In resolving Stryker's objection the Court does not reach the issue of whether the Diemer Memo may be authenticated using some other means.[2]

### C. Affidavit of Brad Kuchinic - Exhibit 483/X10

Stryker objects to the affidavit of Brad Kuchinic, who was the underwriter for the policy at issue, as inadmissible hearsay. (Kuchinic Aff., XLIA's Notice, Docket #848, Ex. D.) Mr. Kuchinic's affidavit purports to authenticate a series of documents, bates numbered WIN 000257-000792. Mr. Kuchinic's affidavit also offers information about the drafting history of the insurance policy at issue.

As to the section of Mr. Kuchinic's affidavit that purports to authenticate a series of documents, he is qualified to make such an authentication because he was the underwriter for the policy at issue and the documents to be authenticated are from the underwriting file. *See United States v. Hathaway*, 798 F.2d 902, 906 (6th Cir. 1986) (discussing the meaning of "qualified person" under Rule 803(6)). Mr. Kuchinic also makes all three of the certifications that are required by Rule 902(11). (Kuchinic Aff. 2.) Therefore Mr. Kuchinic's affidavit authenticates documents bates numbered WIN 000257-000792.

---

[2]At oral argument on the motion that was decided by the Court's January 18, 2007, opinion, XLIA indicated that the Diemer Memo could be authenticated by the depositions of Dyanne Diemer Kashuba that were taken in the underlying cases of *Orrik v. Stryker* and *Bartlett v. Stryker*. In holding that Mr. Reid's affidavit does not authenticate the Diemer Memo, the Court is not reaching the question of whether the Diemer Memo can be authenticated based on either of those two depositions.

Stryker contends that the remainder of Mr. Kuchinic affidavit is inadmissible hearsay. The remainder of Mr. Kuchinic's affidavit addresses the underwriting process for the policy at issue. XLIA does not argue that Mr. Kuchinic's affidavit fits within one of the specific exceptions to the hearsay rule. Rather, XLIA argues that Mr. Kuchinic's deposition should be admitted under Rule 807. Rule 807 requires that:

> the evidence (1) has equivalent circumstantial guarantees of trustworthiness as evidence admitted under Rules 803 and 804; (2) goes to a material fact; and (3) is more probative than any other evidence that reasonably could have been procured. Finally, (4) the admission of the evidence must support the general purposes of the Rules of Evidence and the interests of justice.

*United States v. Jamieson*, 427 F.3d 394, 411 (6th Cir. 2005). Mr. Kuchinic's affidavit does go to material facts about the intention of the parties in drafting the insurance policy. However, XLIA has not offered any analysis as to why Mr. Kuchinic's affidavit is more probative than other evidence that could have been reasonably procured. XLIA does not make any contentions about efforts to depose Mr. Kuchinic or to have him testify at trial. Mr. Kuchinic testimony would undoubtedly be more probative and XLIA has not offered any reasons why it could not have been reasonably procured. Absent unique circumstances admitting affidavits would undermine the general purposes of the Rules of Evidence by admitting a common form of hearsay not specifically provided for in the Rules of Evidence. Stryker's hearsay objection as to exhibit 483/X10 is sustained, except as to the section that authenticates the documents bates numbered WIN 000257-000792.

### D. The FDA Inspection Report - Exhibit 458/Y9

Stryker objects to an inspection report that was prepared by the Food and Drug Administration as irrelevant, inadmissible hearsay and unauthenticated. (FDA Report, XLIA's Notice, Docket #848, Ex. E). Neither party provides any analysis as to whether this document is relevant, therefore the Court overrules Stryker's relevance objection as premature.

Stryker argues that the report is hearsay not within any exception. XLIA contends that the report is a public record and thereby admissible under Rule 803(8). Rule 803(8) provides that:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . . or (C) in civil actions and proceedings . . . factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

FED. R. EVID. 803(8). "Opinions, conclusions, and evaluations, as well as facts, fall within the Rule 803(8)(C) exception." *Bank of Lexington & Trust Co. v. Vining-Sparks Secur. Inc.*, 959 F.2d 606, 616 (6th Cir. 1992). The report indicates that it was prepared pursuant to 21 U.S.C. § 374(b). This places the report within Rule 803(8)(B) as to "matters observed" and within Rule 803(8)(C) as to factual findings and evaluations. Therefore, Stryker's objection as to hearsay is overruled.

Stryker also argues that the report cannot be authenticated. XLIA offers two alternative theories on which the report could be authenticated. The Court reserves the question of authentication for trial, as XLIA has not yet offered evidence in support of either theory of authentication.

### E. Stryker's Trending Report - Exhibit 394/M7

Stryker objects to the trending report as inadmissible hearsay, irrelevant and unauthenticated. (Trending Report, XLIA's Notice, Docket #848, Ex. F.) XLIA alleges the trending report was prepared by Stryker. The trending report provides a list of complaints for Stryker products grouped by the particular type of complaint.

XLIA argues that the report is not hearsay because it is being offered to show notice of the complaints. As offered for this purpose the report is not hearsay.[3] Stryker's objection as to hearsay is overruled.

The Court previously determined that as a matter of law the defect is defined as the "Uni-Knees were available in inventory for implantation by physicians after the expiration of their shelf life." (July 14, 2006 Op., Docket #813, at 9.) Under this definition the report about failures of Uni-Knees is relevant to whether Stryker had knowledge of the defect prior to January 1, 2000. Stryker's objection as to relevance is overruled.

---

[3] To the extent that XLIA can establish that the report was produced by a Stryker employee within the scope of employment, the report is not hearsay because it is an admission. FED. R. EVID. 801(d)(2)(D).

7

XLIA argues that the report is authenticated by a section of Jadwiga Degrado's deposition in which she identifies the trending report. (Degrado Dep. 264:21-268:15, Stryker's Br. Supporting Mot. in Limine, Docket #706, Ex. D.) Upon review of the trending report and Ms. Degrado's deposition, the Court finds that Ms. Degrado deposition authenticates the trending report in conformance with Rule 901(b)(1). Stryker's objection as to authentication is overruled.

## II.  XLIA's Objections to Stryker's Exhibits

### A.  Withdrawn Exhibits

XLIA objected to Stryker's exhibits 28, 39 and 84. Stryker has subsequently withdrawn these three exhibits. Therefore, XLIA's objections to these three exhibits are overruled as moot.

### B.  Dr. Gordon Blunn's testimony interspersed in Dr. John H. Dumbleton's Affidavit - Exhibit 33

Exhibit 33 is a modified version of Dr. John H. Dumbleton's affidavit in which Dr. Gordon Blunn's testimony is interspersed between the original paragraphs in the affidavit. (Modified Dumbleton Aff., XLIA's Notice, Docket #849, Ex. 2.) At Dr. Blunn's deposition he was questioned about his views as to each paragraph in Dr. Dumbleton's affidavit. Those questions and the responses are interspersed between the original paragraphs. XLIA objects to exhibit 33 as inadmissible hearsay, irrelevant, cumulative and prejudicial. Stryker's response indicated that "[e]xhibit 33 is a demonstrative exhibit . . . ." (Br. in Resp. to XLIA's Objections, Docket #860, at 2.) However, the proposed pretrial order lists the modified

Dumbleton affidavit as an evidentiary exhibit.  Stryker's filings are unclear as to the manner in which the modified Dumbleton affidavit is being offered.  The modified Dumbleton affidavit is not a Rule 1006 summary:

> [the] use of summaries must be distinguished from charts and summaries used only for demonstrative purposes to clarify or amplify argument based on evidence that has already been admitted. . . . Although some Courts have considered such charts and summaries under Rule 1006, the Rule is really not applicable because pedagogical summaries are not evidence.  Rather, they are demonstrative aids governed by Rule 403 and 611.

5 STEPHEN A. SALTZBURG ET AL., FEDERAL RULES OF EVIDENCE MANUAL § 1006.02[5], at 1006-6 (9th ed. 2006) (footnotes omitted).  The modified affidavit is a pedagogical aid, not an evidentiary exhibit.  *See United States v. Buck*, 324 F.3d 786, 789-91 (5th Cir. 2003).  Therefore, the modified Dumbleton affidavit will be analyzed as a demonstrative exhibit.[4]  As a demonstrative exhibit, the Court will consider XLIA objections that exhibit 33 is irrelevant, cumulative and unfairly prejudicial.

The modified affidavit goes through the history of the implants used for knee replacement, the use of gamma irradiation and Stryker's shelf life policy.  This information is relevant as background to the questions that will be before the jury.  XLIA's objection to exhibit 33 as irrelevant is overruled.  The question of whether exhibit 33 is cumulative

---

[4]The Court's analysis presupposes that the underlying affidavit and deposition testimony will be admissible at trial.  As the admissibility of those two items is not part of this motion the Court does not address those questions.

depends on what other evidence is presented at trial. XLIA's objection to exhibit 33 as cumulative is overruled as premature.

Lastly, XLIA contends that the modified affidavit is unfairly prejudicial. As explained above, pages one through nine connect Dr. Blunn's testimony about the affidavit to the corresponding paragraphs in Dr. Dumbleton's affidavit. However, page ten of the modified affidavit contains information that is not part of either the original affidavit or the deposition testimony. Page ten contains background information on Dr. Dumbleton, provides information about shelf life policy not contained in the affidavit and the compensation rate for one of the parties at the deposition. Page ten also contains conclusory statements indicating that the shelf life policy was unnecessary. The Court finds that this information confuses the issues and is unfairly prejudicial. *See* FED. R. EVID. 403. XLIA's objection to exhibit 33 as to unfair prejudice is sustained.

### C. Fax from Brad Kuchinic and Underwriting Documents - Exhibit 38

Exhibit 38 is a fax from Brad Kuchinic to J&H Marsh & McLennan, Inc. (Kuchinic Fax, XLIA's Notice, Docket #s 852 & 853.) The exhibit also includes several other documents related to the underwriting of the insurance policy at issue. The documents primarily address the claims history of Howmedica Inc. prior to the asset purchase by Stryker. XLIA objects to this exhibit as irrelevant and inadmissible hearsay. Stryker argues that the material is relevant to the issue of knowledge, because the documents indicate the knowledge about claims that XLIA had prior to underwriting the insurance policy at issue.

10

This exhibit is relevant to clarifying the type of knowledge that would preclude coverage under the Medical Products Endorsement. As to XLIA's hearsay objection, exhibit 38 is not hearsay because it is being offered to show notice. XLIA's objections to exhibit 38 as to relevance and hearsay are overruled.

### D. Loss Run Report - Exhibit 81; Letter from Beth Krause to Peter Duncan - Exhibit 89

Exhibit 81 is a loss run report that was prepared by XLIA's predecessor Winterthur. (Winterthur Loss Report, XLIA's Notice, Docket #855, Ex. 1.) Exhibit 89 is a letter from Beth Krause to Peter Duncan, updating the loss run information for the year 2000. (Letter from Beth Krause to Peter Duncan, XLIA's Notice, Docket #855, Ex. 5.) XLIA objects to exhibits 81 and 89, arguing that they are inconsistent with the Court's December 20, 2006, memorandum opinion and order which held that the defense and settlement costs for the underlying suits are inadmissible during the first phase of the trial. (Dec. 20, 2006 Mem. Op. & Order, Docket #836, at 3-5.) The Court has reviewed the exhibits and all of the specific dollar amounts for either the defense or settlement costs of the underlying lawsuits have been redacted. Based on these redactions the exhibits are consistent with the Court's December 20, 2006, memorandum opinion and order. The Court therefore overrules XLIA's objection to exhibits 81 and 89 as to defense and settlement costs.

### E. Email from Bob Koch to Peter Duncan - Exhibit 82

Exhibit 82 is an email from Bob Koch, Howmedica Osteonics' in-house counsel, to Peter Duncan, XLIA's claims examiner. (Email from Bob Koch to Peter Duncan, XLIA's

11

Notice, Docket #855, Ex. 2.) The email includes an attachment in the form of a spreadsheet detailing the claims and lawsuits related to the Uni-Knees. XLIA objects to this exhibit as irrelevant, inadmissible hearsay, unfairly prejudicial and contends that the exhibit references settlement amounts in violation of the Court's December 20, 2006, memorandum opinion and order.

Stryker argues that exhibit 82 is being offered to show that Stryker cooperated with XLIA as required by the insurance policy. XLIA's cooperation is relevant background information. Stryker argues that the email and the spreadsheet are not hearsay because it is only being offered to show that Stryker provided this information to XLIA. As offered for this purpose, the email and the spreadsheet are not hearsay.

The basis of the unfair prejudice is unclear, but it could be argued that unfair prejudice would arise from the email and the spreadsheet because some of the names on the spreadsheet are individuals for whom there is a dispute as to whether they suffered bodily injury between January 1, 2000, and January 1, 2001. The dispute about these individuals is not about whether they made a claim against Stryker, but whether they suffered bodily injury in the policy period. Therefore there is no unfair prejudice from the individuals' names appearing on the spreadsheet.

XLIA also contends that exhibit 82 is inconsistent with the Court's ruling that defense and settlement costs are inadmissible during the first phase of the trial. However, the

settlement or claim amounts have been redacted from the spreadsheet. The exhibit therefore conforms to the Court's order excluding evidence of defense and settlement costs.

XLIA's objections to exhibit 82 as to relevance, hearsay, unfair prejudice and defense and settlement costs are overruled.

### F.  Email from James Walker to Curtis Hall - Exhibit 85

Exhibit 85 is an email from James Walker explaining XLIA's interpretation of the self-insured retention limit. (Email from James Walker to Curtis Hall, XLIA's Notice, Docket #855, Ex. 4.) XLIA objects to exhibit 85 as being inconsistent with the Court's ruling that defense and settlement costs are inadmissible during the first phase of the trial. Stryker has redacted the specific dollar amounts. However, the email still contains the dollar value of the self-insured retention amount as well as the percentage that has been exhausted. These two figures provide a simple means by which the defense and settlement costs could be calculated. The email is therefore inconsistent with the Court's ruling that defense and settlement costs are inadmissible. XLIA's objection to exhibit 85 as to defense and settlement costs is sustained.

### G.  Letters from Curtis Hall to Peter Duncan - Exhibits 111 and 112

Exhibit 111 is a letter from Curtis Hall to Peter Duncan, regarding Stryker's position that the claims are a batch. (May 16, 2001 Letter from Curtis Hall to Peter Duncan, XLIA's Notice, Docket #855, Ex. 6.) Exhibit 112 is a letter from Curtis Hall to Peter Duncan updating XLIA on the status of the Uni-Knee claims. (Oct. 11, 2001 Letter from Curtis Hall

13

to Peter Duncan, XLIA's Notice, Docket #855, Ex. 7.) XLIA objects to exhibits 111 and 112 as irrelevant, inadmissible hearsay, unfairly prejudicial and inconsistent with the Court's ruling that defense and settlement costs are inadmissible during the first phase of the trial.

Stryker argues that exhibit 111 is relevant because it addresses Stryker's interpretation of the what constitutes a batch under the insurance policy and it shows that Stryker was cooperating with XLIA. Stryker's cooperation with XLIA is relevant background information. Stryker's interpretation of what constitutes a batch is relevant because the jury will be asked to decide what constitutes a batch under the insurance policy.

Stryker argues that exhibit 112 is relevant because it shows Stryker's continued cooperation with XLIA and that XLIA had not responded to Stryker's request for coverage. Stryker's cooperation is relevant background information. The alleged failure of XLIA to respond is also relevant to the interpretation of the insurance policy.

XLIA contends that both exhibits are unfairly prejudicial, however, XLIA does not explain the basis of the unfair prejudice. After having reviewed the exhibits, the Court has not found any basis on which either exhibit would be unfairly prejudicial.

Stryker argues that exhibit 111 is not hearsay because the letter is being offered to show that Stryker was cooperating and that Stryker was timely in notifying XLIA. In addition, Stryker has redacted a portion of the letter that provided the legal opinion of Stryker's counsel and that did constitute hearsay. Consistent with Stryker's response to the

question of relevance, the letter is also being offered to show Stryker's interpretation of what consistutes a batch. As to these purposes exhibit 111 is not hearsay.

Stryker argues that exhibit 112 is not hearsay because the letter is being offered to show that Styker was cooperating with XLIA. The letter is also being offered to show that XLIA had not responded. However, the letter does not contain any statements on this issue, so there is no hearsay issue with regard to such statements. As to these purposes exhibit 112 is not hearsay.

XLIA also argues that both exhibits are inconsistent with the Court's ruling that defense and settlement costs are inadmissible during the first phase of the trial. Stryker has redacted all of the defense and settlement costs that were in the exhibits. Based on these redactions both exhibits are consistent with the Court's ruling that defense and settlement costs are inadmissible during the first phase of the trial.

The Court therefore overrules XLIA's objections to exhibits 111 and 112 as to relevance, hearsay, unfair prejudice and defense and settlement costs.

### III.

For the foregoing reasons, the parties objections are overruled and sustained as set forth in this opinion. An order will be entered consistent with this opinion.


Date:   January 23, 2007             /s/ Robert Holmes Bell
                                     ROBERT HOLMES BELL
                                     CHIEF UNITED STATES DISTRICT JUDGE