UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STRYKER CORPORATION, et al.,

      Plaintiffs,

                                File No.  4:01-CV-157

v.

                                HON. ROBERT HOLMES BELL

XL INSURANCE AMERICA INC., formerly
known as WINTERTHUR INTERNATIONAL
AMERICA INSURANCE COMPANY,

      Defendant.

_____/

**O P I N I O N**

This matter is before the Court on a motion for partial summary judgment filed by

Plaintiffs Stryker Corporation ("Stryker") and Howmedica Osteonics Corporation. (Dkt. No.

1034.)  Plaintiffs move for summary judgment as to the reasonableness of certain costs

related to the claims of defective Duracon Uni-knees ("DUK claims"): (1) the settlements

for the underlying claims, and (2) a portion of the defense costs.  In addition, Plaintiffs seek

a ruling that Plaintiffs are entitled to 12% prejudgment interest on the full amount of the final

judgment.  The Court heard oral argument on this motion on November 25, 2008.  For the

reasons that follow, the Court grants Plaintiffs' motion for partial summary judgment.

**I.**

Plaintiffs filed this lawsuit against Defendant alleging that Defendant breached the

terms of the Commercial Umbrella Policy that provided Stryker insurance coverage from

January 1, 2000, until January 1, 2001.  The Court bifurcated this matter into two phases.

The Court limited the first phase to the question of whether there is coverage under the

Policy.  On April 3, 2007, the first phase concluded when the Court issued an opinion setting

forth the Court's findings of fact and conclusions of law, based on the bench trial held

January 29 - February 2, 2007.  The Court determined that Stryker is entitled to coverage

under the insurance policy and that Defendant XL Insurance America Inc. ("XLIA") had and

continues to have a duty to defend and indemnify Stryker.  (Dkt. No. 916, 04/03/2007 Op.

33.)  The second phase is to determine the amount of damages.  The motion presently before

the Court is part of the second phase.

## II.

### A.      Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c),  summary judgment is proper if there

is no genuine issue as to any material fact and the moving party is entitled to judgment as a

matter of law.  In evaluating a motion for summary judgment the court must look beyond the

pleadings and assess the proof to determine whether there is a genuine need for trial.

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  If the

Plaintiffs carry their burden of showing there is an absence of evidence to support an

essential element of Defendant's case, then Defendant must demonstrate by affidavits,

depositions, answers to interrogatories, and admissions on file, that there is a genuine issue

of material fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986).

In considering a motion for summary judgment, the court must construe the evidence

and draw all reasonable inferences in favor of the nonmoving party. *Minges Creek, L.L.C. v. Royal Ins. Co. of Am.*, 442 F.3d 953, 955-56 (6th Cir. 2006) (citing *Matsushita*, 475 U.S. at 587).

In a previous opinion, the Court determined that, under the circumstances of this case, the settlement and defense costs are presumed to be reasonable, and XLIA bears the burden of proving that such costs are unreasonable. (Dkt. No. 949, 01/04/08 Op. 7-8.)

**B.     Costs**

1. Settlement Costs

Defendant does not contest the reasonableness of the settlements in the underlying cases. Thus, the Court will grant Plaintiffs' motion for summary judgment on the reasonableness of the settlement costs, totalling $7,620,731.07.

2. Non-Hogan & Hartson Attorneys' Fees

Defendant does not contest the reasonableness of the defense costs consisting of fees paid to law firms other than Hogan & Hartson. Thus, the Court will grant Plaintiffs' motion for summary judgment on the reasonableness of the fees paid to law firms other than Hogan & Hartson, totalling $3,089,524.58.

3. Hogan & Hartson Attorneys' Fees Marked "OK"

Defendant challenges the reasonableness of fees paid by Plaintiffs to the law firm Hogan & Hartson. Defendant contends that the Hogan & Hartson billing records provided by Plaintiffs make it impossible for Defendant to ascertain whether a significant portion of the billing entries are reasonable or unreasonable, due to, among other things, Hogan &

Hartson's practice of "block billing" multiple activities in one time entry. Plaintiffs respond that they seek summary judgment only on a subset of the Hogan & Hartson billing entries, *i.e.* those that Defendant's expert allegedly determined to be reasonable.

Defendant engaged its expert, Bruce Neckers, to review the attorneys' fees billed by Hogan & Hartson. Neckers reviewed the entries on a line-by-line basis. According to his deposition testimony, on certain lines he made an entry or a note. For instance, on some lines he wrote "ok," on other lines he wrote "block," and on some lines he wrote a question mark. Plaintiffs seek summary judgment only for the entries that are marked "ok." Plaintiffs assert that, for these entries, there is no genuine issue of material fact as to reasonableness, because even Defendant's expert admits that these entries were reasonable, or at least admits that he cannot challenge the reasonableness of these entries. In his deposition, Neckers testified as follows:

> Q.    . . . The first, the very first line is "block."
> A.    Right.
> Q.    And tell me what that signifies.
> A.    Block billing, as I've described in my report.
> Q.    Okay. And the next is "ok." And tell me what that signifies.
> A.    It means as a line item it's acceptable.
> Q.    And then a question mark. I see that below there.
> A.    Right.
> Q.    And what does that signify?
> A.    Depending upon when I did it and each individual line item, it means that I had some question about the reasonableness of it.
> Q.    Okay. Let's talk about the ones where you put "ok." You mentioned that as a line item that was acceptable?
> A.    Yes.
> Q.    And for that particular line item, the amount of time spent was reasonable?
> A.    Right . . . .

> . . . the time is from my standpoint acceptable from a reasonable amount of time basis.
>
> Q.    So at least insofar as the entries have an "ok" by them, if we took all of those entries and put them into a separate spreadsheet, for those entries you were not implying that any of them were unreasonable?
>
> A.    I believe that's true.  Could have made a mistake, but that was my intention anyway.
>
> Q.    . . . I'll ask it a different way.  For the entries where there's an "ok" in the column "Necker's Note," you believe that that time and that time entry is reasonable for the defense of the case?
>
> A.    No.  I believe that I cannot -- in the requirement of this case as it has been established by Judge Bell, that I cannot contest the reasonableness of that particular entry.

(08/18/08 Neckers Dep. 19-21.)   Defendant argues that Neckers's testimony does not necessarily acknowledge the reasonableness of these fees, but asserts that he "cannot contest the reasonableness" of the fees because of the lack of detail in the records provided by Plaintiffs, due to the practice of "block billing" multiple activities as part of one billing entry. Based on review of Neckers's deposition testimony and expert report, Defendant's argument is not applicable to the entries for which Plaintiffs seek summary judgment and is inconsistent with Neckers's testimony regarding those entries.  According to his deposition testimony, Neckers made a distinction in his notes between block-billed time entries and those entries that he noted were "ok"; the former he labelled "block."  Plaintiffs seek summary judgment only for the latter entries labelled "ok."  In addition, Neckers specifically stated in his deposition that he found the entries labelled "ok" to be "acceptable" and reasonable on an "amount of time basis," which distinguishes these entries from block-billed entries.   In comparison, Neckers states in his expert report that block-billed entries "frustrated [his] efforts to evaluate whether the amount of time expended on various tasks

was reasonable . . . ." (Dkt. No. 1039, Ex. D, Neckers Report 22.)  Defendant offers no basis

for a factfinder to conclude that any of the entries labelled "ok" by Neckers are among those

that Defendant claims cannot be analyzed for reasonableness, or are otherwise unreasonable.

In light of the testimony of Defendant's expert and the lack of evidence in support of

Defendant's position, Defendant has failed, following adequate time for discovery, to make

a sufficient showing that any of these entries are unreasonable.[1] *Celotex*, 477 U.S. at 322-23.

Thus, the Court will grant Plaintiffs summary judgment with respect to the reasonableness

of the Hogan & Hartson fees labelled "ok" by Defendant's expert, in an amount totalling

$1,416,625.18.  According to Plaintiffs, approximately $1.8 million in Hogan & Hartson fees

remain in dispute.

## C.      Prejudgment Interest

Finally, Plaintiffs seek a ruling that they are entitled to 12% prejudgment penalty

interest on the amount of their final judgment.  State law governs questions of prejudgment

interest in diversity cases.  *FDIC v. First Heights Bank, FSB*, 229 F.3d 528, 542 (6th Cir.

2000).  Plaintiffs seek prejudgment interest pursuant to Mich. Comp. Laws § 500.2006,

which provides, in relevant part:

---

[1]At oral argument, Defendant presented an affidavit from its attorney that Neckers was
in the process of reviewing newly discovered pleadings files that, according to the affidavit,
Neckers describes as "very valuable and important to his ongoing analysis of the
reasonableness of Hogan & Hartson's billings."  (11/25/08 Aff. of David Bloss in Supp. of
Opp'n to Mot. for Summ. J.)  The vague assertion by Defendant's attorney of the existence
of "valuable and important" information, without indication as to its relevance to the
reasonableness of the specific billing records at issue, is insufficient to show that there
remains a genuine issue of material fact.  It is also hearsay.  Fed. R. Evid. 801, 802.

> If benefits are not paid on a timely basis the benefits paid shall bear simple interest
> from a date 60 days after satisfactory proof of loss was received by the insurer at the
> rate of 12% per annum, if the claimant is the insured or an individual or entity directly
> entitled to benefits under the insured's contract of insurance. If the claimant is a third
> party tort claimant, then the benefits paid shall bear interest from a date 60 days after
> satisfactory proof of loss was received by the insurer at the rate of 12% per annum if
> the liability of the insurer for the claim is not reasonably in dispute, the insurer has
> refused payment in bad faith and the bad faith was determined by a court of law.

Mich. Comp. Laws § 500.2006(4).  According to the statute, benefits are paid on a "timely

basis" if paid within 60 days "after receipt of the proof of loss." Mich. Comp. Laws

§ 500.2006(3).

   1. Claims Reasonably in Dispute

   The interest provision applies to claims by the insured even if the insurance claim is

reasonably in dispute. *Griswold Properties, LLC v. Lexington Ins. Co.*, 741 N.W.2d 549, 553

(Mich. App. 2007) (special panel decision) ("*Griswold II*").   There is no question that

Plaintiffs are insureds under the policy, not third-party tort claimants.  Defendant urges this

Court to disregard *Griwold II* and follow the opposite interpretation given in *Century

Indemnity Co. v. Aero-Motive Co.*, which Judge Quist determined was favored by the "vast

majority" of courts.  318 F. Supp. 2d 530, 546 (W.D. Mich. 2003).

   Prior to *Griswold II*, the Supreme Court of Michigan determined that the "not

reasonably in dispute" requirement of the penalty interest provision applies only to third-

party tort claimants, not the insured.  *Yaldo v. North Pointe Ins. Co.*, 578 N.W.2d 274, 277

(Mich. 1998).  Later decisions determined that this holding was non-binding dictum, because

the real issue before the court in *Yaldo* was the applicability of different interest provision,

Mich. Comp. Laws § 600.6013.  *See, e.g., Griswold Properties, LLC v. Lexington Ins. Co.*,

740 N.W.2d 659, 664 (Mich. App. 2007) ("*Griswold I*").  Such courts, including *Century*

*Indemnity*, followed the interpretation of *Arco Industries Corp. v. American Motorists*

*Insurance Co.,* 594 N.W.2d 74, 76 (Mich. App. 1998) ("*Arco Industries II*") that the "not

reasonably in dispute" requirement applied to the insured as well as third-party tort claimants.

*See also Century Indemnity*, 318 F. Supp. 2d at 546-47.

    However, the law in Michigan has since changed.  Subsequent to the decisions in

*Century Indemnity*, *Arco Industries II*, and *Griswold I*, the Michigan Court of Appeals held,

in a special panel decision, that the "not reasonably in dispute" limitation applies only to

third-party tort claimants, not to the insured under the policy.  *Griswold II*, 741 N.W.2d at

553.  Given the concurrence between the holding of the special panel of the Michigan Court

of Appeals in *Griswold II* and the *dictum* from the Michigan Supreme Court in *Yaldo*, the

rule in *Griswold II* will be followed by this Court.  *See Alticor, Inc. v. Nat'l Union Fire Ins.*

*Co. of Penn.*, No. 1:07-CV-522, 2008 WL 4057845 *7 (W.D. Mich. Aug. 28, 2008)

(applying the rule in *Griswold II*).  *See also Garden City Osteopathic Hosp. v. HBE Corp.*,

55 F.3d 1126, 1130 (6th Cir. 1995) (holding that in diversity cases if "the state's highest

court has not decided the applicable law, then the federal court must ascertain the state law

from 'all relevant data,'" which includes "state appellate court decisions" and "the state's

supreme court *dicta*") (citations omitted).

    At oral argument, Defendant argued that the Court should consider the language in

subsection (1) of the penalty interest statute, which states that "Failure to pay claims on a

timely basis or to pay interest on claims as provided in subsection (4) is an unfair trade practice unless the claim is reasonably in dispute." Mich. Comp. Laws § 500.2006(1). Defendant contends that the "reasonably in dispute" reference in subsection (1) implies that it should be applied broadly to all of subsection (4). However, the court in *Griswold II* considered this argument and rejected it based on the specific language of subsection (4). *Griswold II*, 741 N.W.2d at 559. Subsection (4) uses the "reasonably in dispute" language in the sentence regarding third-party tort claimants, but not in the sentence regarding the insured. *Id.* The Court will follow the reasonable interpretation of the statute found in *Griswold II*.

### 2. Applicability of Section 500.2006

Defendant claims that the penalty interest provision does not apply because the liability insurance policy at issue is not the kind of insurance (*e.g.*, fire or caualty insurance) that is subject to a "proof of loss." The purpose of a proof of loss is to "to allow the insurer to form an intelligent estimate of its rights and liabilities, to afford it an opportunity for investigation, and to prevent fraud and imposition upon it." *Wineholt v. Cincinnati Ins. Co.*, 179 F. Supp. 2d 742, 752 (W.D. Mich. 2001) (quoting *Barnes v. State Farm Fire & Cas. Co.*, 623 F. Supp. 538, 540 (E.D. Mich. 1985) (citing 44 Am. Jur. 2d at § 1323, *Wehner v. Foster*, 49 N.W.2d 87 (Mich. 1951); *Wisconsin Michigan Power Co. v. Gen. Cas. & Surety Co.*, 233 N.W.2d 333 (Mich. 1930)). The court in *Barnes* also stated that "Notice is not the only purpose, however. One purpose of the proof of loss is to obtain a statement of the loss from the insured under oath such as will subsequently bind the insured and protect against the

imposition of fraud." 623 F. Supp. at 540.  Defendant contends, relying on this rationale, that

proof of loss was not applicable to the policy at issue in the instant case.  The insurance

policy at issue merely required notice of liability claims (not "proof of loss").  Furthermore,

Defendant contends that it had not received any notice or estimate of the amount of liability

that Plaintiffs might face, and such an estimate was not even possible at the time that

Defendant received notice from Stryker.  Thus, Defendants contend that the notice of claims

required under the liability insurance contract at issue is not a "proof of loss" as contemplated

by the penalty interest provision because it did not and could not "allow the insurer to form

an intelligent estimate of its rights and liabilities[.]" *Wineholt*, 179 F. Supp. 2d at 747.

There is, however, no limitation in the penalty interest provision to certain types of

insurance policies, and Defendant cites no case law supporting this holding.  As Plaintiff

points out, other sections of this statute refer to specific types of insurance, but no such

limitation is present in subsection (4), and there is no provision in subsection (4) or elsewhere

excluding liability policies from the penalty interest provision.  *See* Mich. Comp. Laws

§ 500.2006(3) (referring to a "policy of life insurance"); Mich. Comp. Laws § 500.2006(7)

(excluding certain  "health plans" from subsection (4)).  Moreover, the penalty interest

provision has been applied by courts to defense obligations under general liability policies.

*See Alticor*, 2008 WL 4057845 at *7 (applying the statute as "the substantive law regarding

insurance benefits" to defense costs under a liability policy); *Arco Indus. Corp. v. Am.*

*Motorists Ins. Co.*, 594 N.W.2d 61, 72 (Mich. App. 1998)  ("*Arco Industries I*") (same),

*rev'd on other grounds, Arco Industries II*, 594 N.W.2d at 74.

The question addressed in *Wineholt* was whether or not the insured had satisfied the proof of loss requirement in a contract, not the proof of loss requirement in the penalty interest statute. *See Wineholt*, 179 F. Supp. 2d at 746. Unlike the defendant in *Wineholt*, Defendant does not claim that Plaintiff's notice was insufficient under the insurance contract; rather, Defendant argues that the penalty interest statute does not apply. Defendant appears to have waived any argument that the notice was not satisfactory as a proof of loss under § 500.2006. The statute requires that "An insurer shall specify in writing the materials that constitute a satisfactory proof of loss not later than 30 days after receipt of a claim . . . ." Mich. Comp. Laws § 500.2006(3). Thus, if the insurer fails to specify, in response to receipt of a claim, what constitutes a satisfactory proof of loss, then the insurer waives the right to demand a satisfactory proof of loss. *Medley v. Canady*, 337 N.W.2d 909, 912 (Mich. App. 1983). Plaintiffs contend that Defendant never specified in response to Plaintiff's notice what materials would constitute a satisfactory proof of loss, and Defendant does not challenge this assertion.

Even though it is not directly applicable to the instant case, the decision in *Wineholt* indicates that Defendant reads the purposes of a proof of loss too narrowly. *Wineholt* determined that a satisfactory proof of loss is determined in part by the circumstances, and "substantial compliance" with the requirements of the contract may be sufficient. 179 F. Supp. 2d at 752. Substantial compliance recognizes that the insured may not be able, in some circumstances, to provide all information necessary for the insurer to evaluate its rights and liabilities, and requires only that "the insured has complied to the extent to which compliance

11

is possible . . . ."  *Id.* at 749 (quoting Lee R. Russ & Thomas F. Segalla, 13 *Couch on Insurance* § 186.36 (3d ed. 1999)).  Thus, even under the standard in *Wineholt*, Stryker's inability to assess or even estimate the amount of liability that it might face at the time that it provided notice to Defendant does not mean that the notice was not a "proof of loss" as contemplated by the penalty interest statute.

        3. Date of Accrual of Prejudgment Interest

Plaintiffs seek interest accruing from 60 days after August 17, 2000, the date on which Plaintiff first notified Defendant of certain of the DUK claims.  Plaintiffs contend that the insurance policy provides coverage by "batch" of defective knee replacements; thus, Plaintiffs argue that interest should accrue from the earliest date that Stryker notified Defendant of claims under the batch.  Defendant argues that, even if the penalty interest statute applies, the interest should not accrue from a date when it had notice of only some, but not all, of the DUK claims.

Defendant relies on cases that limit the date of accrual of prejudgment interest to the date of the filing of the complaint, or, if later, the date that the claim arose.  *See, e.g., McKelvie v. Auto Club Ins. Co.*, 512 N.W.2d 74 (Mich. App. 1994); *Perceptron, Inc. v. Sensor Adaptive Machines, Inc.*, 221 F.3d 913 (6th Cir. 2000).  Other cases cited by Defendant indicate that prejudgment interest should not accrue until actual delay is made by Defendant (*i.e.* after the date that the claim arises or after payment is due).  *See, e.g., Foremost Life Ins. Co. v. Waters*, 337 N.W.2d 29 (Mich. App. 1983); *Central Mich. Univ. Faculty Ass'n v. Stengren*, 370 N.W.2d 383 (Mich. App. 1985); *Beach v. State Farm Mut.*

*Auto. Ins. Co.*, 550 N.W.2d 580 (Mich. App. 1996).  None of the foregoing cases cited by Defendant are directly applicable because they involve a different prejudgment interest statute, Mich. Comp. Laws § 600.6013, rather than the penalty interest statute in Mich. Comp. Laws § 500.2006.  These cases rely, in part, on the principle that prejudgment interest under Mich. Comp. Laws § 600.6013 is intended to compensate the insured for the loss of the use of funds to which it is entitled; however, the penalty interest provision in Mich. Comp. Laws § 500.2006(4) is intended to *penalize* the insurer for dilatory action.  *Compare McKelvie*, 512 N.W.2d at 79 (holding that awarding interest from the date of the complaint on a claim arising after that time "exceeds the purpose of compensating for a delayed payment, overcompensates for the related litigation, and departs from the purpose of providing an incentive for prompt settlement . . . .  [W]e are not persuaded that the Legislature intended such a result under § 6013.") *with Yaldo*, 578 N.W.2d at 277 (acknowledging that § 500.2006 allows interest to accrue prior to the filing of the complaint because ". . . it allows an insured to recover twelve percent interest from its insurer where no complaint has been filed to force payment.  It applies when the insurance company is dilatory in making timely payments to the insured.  Its purpose is to punish the insurance company.").

The Court agrees that 12% prejudgment interest should not accrue from 60 days after August 17, 2000, for all of the DUK claims; rather, the interest should accrue according to dates that Defendant received notice of the specific claims.  Though the purpose of § 500.2006(4) is to punish, rather than to compensate, for the insurer's dilatory action, and even though the insurance contract provided for "batch" coverage for all of the claims,

13

Defendant could not be dilatory in evaluating or providing benefits on claims of which it had not yet received notice and for which there was no "proof of loss." Thus, Plaintiffs shall be entitled to 12% prejudgment interest on the final judgment entered in this case, accruing 60 days after the dates that Defendant received notice of each DUK claim.

### III.

For the foregoing reasons, the Court grants Plaintiffs' motion for partial summary judgment with respect to the reasonableness of: (1) the settlements for the DUK claims, (2) the non-Hogan & Hartson defense costs, and (3) the Hogan & Hartson defense costs labelled "ok" by Defendant's expert, Neckers, in a total amount of $12,126,881. The Court also finds that Plaintiffs are entitled to 12% prejudgment interest pursuant to Mich. Comp. Laws § 500.2006 on the amount of the final judgment in this case, accruing 60 days after the dates that Defendant received notice of each DUK claim. An order will be entered consistent with this opinion.

Dated: <u>December 15, 2008</u>                    /s/ Robert Holmes Bell
                                                      ROBERT HOLMES BELL
                                                      UNITED STATES DISTRICT JUDGE