UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STRYKER CORPORATION, et al.,

    Plaintiffs,

File No. 4:01-CV-157

v.

HON. ROBERT HOLMES BELL

XL INSURANCE AMERICA INC., formerly
known as WINTERTHUR INTERNATIONAL
AMERICA INSURANCE COMPANY, et al.,

    Defendants.
    _____/

## **O P I N I O N**

The motions before the Court arise under three related actions. Each of the three actions involves claims for indemnification by Stryker Corporation ("Stryker") and its subsidiary, Howmedica Osteonics Corporation ("Howmedica"), from their insurers for third-party claims related to defective Duracon Uni-Knee products ("DUK Claims"). The insurers are Defendants XL Insurance America, Inc. ("XLIA"), formerly known as Winterthur International America Insurance Company and National Union Fire Insurance Company of Pittsburgh ("National Union"). TIG Insurance Company ("TIG"), an excess insurer for Plaintiffs with respect to the DUK Claims, is not a party to this action. The three actions are:

(1)     *Stryker v. XLIA*, No. 4:01-cv-157 (*Stryker I*), in which Stryker sought indemnification from XLIA and National Union for DUK Claims brought against Stryker;

(2)     *Stryker v. XLIA,* No. 1:05-cv-51 (*Stryker II*), in which Stryker sought indemnification from XLIA, National Union, and TIG for DUK Claims brought against Pfizer, Inc. ("Pfizer"). Stryker is contractually obligated to defend and indemnify these claims

pursuant to an Asset Purchase Agreement, and Pfizer brought suit against Stryker to enforce these obligations in *Pfizer v. Stryker*, No. 02-cv-8613 (S.D.N.Y.); and

(3) *TIG v. Stryker*, No. 1:09-cv-156 (*Stryker III*), in which TIG seeks a declaratory judgment against Stryker and XLIA that: (i) it is not liable to Stryker until the underlying insurance obligations have been exhausted, and (ii) the underlying insurance obligations have not been exhausted.

The Court heard oral arguments on pending motions in these actions on September 21, 2009. The motions before the Court in this action, *Stryker I*, are Plaintiffs' motion for entry of final judgment (Dkt. No. 1081) and Defendant XLIA's motion for partial summary judgment (Dkt. No. 1072). For the reasons that follow, the Court will grant Plaintiffs' motion for entry of final judgment and deny Defendant's motion for partial summary judgment.

**I.**

Plaintiffs allege that Defendant XLIA breached the terms of an insurance policy providing Stryker insurance coverage for the DUK Claims. The Court bifurcated this matter into two phases. On April 3, 2007, the first phase concluded when the Court issued an opinion determining that Stryker is entitled to coverage under the insurance policy and that Defendant XLIA had and continues to have a duty to defend and indemnify Stryker. (Dkt. No. 916, 04/03/2007 Op. 33.) As part of the second phase (the damages phase), on December 15, 2008, the Court granted partial judgment in favor of Stryker in the amount of $12,126,881, representing Stryker's settlement costs for the DUK Claims and a portion of Stryker's defense costs for the DUK Claims. (*Stryker I*, Dkt. No. 1055, 12/15/2008 Op., Order & J.) The Court also awarded 12% prejudgment interest. (*Id.*) According to the parties, XLIA subsequently agreed not to contest the reasonableness of the remaining defense

costs. Stryker therefore moves for entry of a final judgment that includes these costs.

*Stryker I* Judgment

| | |
|---|---|
| Stryker's DUK settlement costs: | $ 7,620,731 |
| Stryker's DUK defense costs: | $ 4,506,150 |
| 12/15/2008 Partial Judgment: | $ 12,126,881 |
| Remaining defense costs: | $ 1,727,779 |
| Total: | $ 13,854,660 (not incl. prejudgment interest) |

Defendant XLIA has filed a motion for partial summary judgment seeking to have the Court declare that XLIA is not liable for Plaintiffs' settlement costs at issue in this action.[1] XLIA contends that on February 2, 2009, it made a $26 million payment to Pfizer to settle Pfizer's claims against Stryker in *Pfizer v. Stryker* ("Pfizer Settlement"). It further contends that at least $17 million of this payment is covered by the policy and exhausts the policy limit. XLIA argues that the Court cannot, and should not, enter final judgment while its motion for partial summary judgment is pending and while the issue of its liability for the final judgment remains in dispute. Plaintiffs raise both procedural and substantive objections to Defendant's motion.

**A. Procedural Objections**

Stryker argues, first, that XLIA's motion is procedurally defective because it is untimely, having been filed after judgment and after the deadline for dispositive motions, and because it improperly seeks declaratory relief by a motion.

---

[1] It does not seek to avoid payment of Stryker's defense costs or of the prejudgment interest awarded in this action.

XLIA's motion is titled a motion for "partial summary judgment and for declaratory relief," and XLIA contends that it is moving for relief pursuant to Rule 56(b) of the Federal Rules of Civil Procedure. However, the motion does not argue the Rule 56 standard for summary judgment, nor does it indicate the claim on which it seeks summary judgment. Regarding the timing of its motion, XLIA contends that it filed the motion shortly after paying Pfizer the settlement in February and it could not have filed it any sooner. XLIA contends that Rule 56(b) permits a party may move for summary judgment "at any time." Fed. R. Civ. P. 56(b).[2]

To the extent that XLIA's motion seeks "declaratory relief," Plaintiffs argue that such relief may be considered only "upon the filing of an appropriate pleading." 28 U.S.C. § 2201(a). Generally, motions are not "pleadings." *See* Fed. R. Civ. P. 7(a) (listing pleadings as complaints, answers, claims, and counterclaims). XLIA contends that it does not seek to add a counterclaim for declaratory relief; it argues that a new counterclaim is unnecessary because a motion for summary judgment would accomplish the same purpose.

Because the Court has already awarded judgment, the Court agrees that a motion for summary judgment is inappropriate. XLIA offers no precedent or authority for a summary judgment motion made after judgment (or partial judgment) has already entered. Granting XLIA relief on its motion would require the Court to amend or vacate its previous judgment

---

[2]The new Rule 56(b), which is set to take effect December 1, 2009, states that a party may move for summary judgment "until 30 days after the close of discovery[.]" Fed. R. Civ. P. 56(b) (effective Dec. 1, 2009).

against XLIA. It appears that the proper approach is for XLIA to move for relief from judgment pursuant to Rule 60(b). *See* Fed. R. Civ. P. 60(b) (allowing a Court to grant a party relief from a judgment, if the motion is made within a reasonable time, based on "newly discovered evidence," or if the judgment has been satisfied, or for "any other reason that justifies relief").

XLIA contends, in the alternative, that the Court can recharacterize its motion as a motion for relief from judgment or for reconsideration, and there does not appear to be any *procedural* reason why the Court could not do so. Nevertheless, the Court finds that recharacterizing Defendant's motion would be futile because it fails as a substantive matter for the reasons that follow.

**B. Substantive Objections**

Plaintiffs' substantive objections relate to the specific amounts paid by XLIA as part of the Pfizer Settlement. On April 20, 2005, the District Court for the Southern District of New York entered a $17.7 million interlocutory judgment in favor of Pfizer in *Pfizer v. Stryker*, Pfizer's suit against Stryker for indemnification from DUK Claims brought against Pfizer. The judgment included Pfizer's settlement costs for the DUK Claims, Pfizer's defense costs for defending the DUK Claims, and Pfizer's attorney's fees pursuing indemnification from Stryker, as well as prejudgment interest. The judgment was interlocutory in nature because certain of Stryker's counterclaims remained pending.

The parties agree that the liability limit of the XLIA policy is effectively $17 million.[3] XLIA contends that its payment of the Pfizer Settlement meets the $17 million limit as follows:

*Pfizer v. Stryker* Settlement

| | |
|---|---|
| **Pfizer's DUK settlement costs** | $12,840,111 |
| **Pfizer's DUK defense costs** | $1,105,545 |
| **Pfizer's attorney's fees in *Pfizer v. Stryker*** | $3,054,344 |
| **Subtotal:** | **$17,000,000** |
| **"Supplementary Payments"** | $9,000,000 [4] |
| **Total Pfizer Settlement:** | $26,000,000 |

Stryker argues that, even if the $12.8 million in Pfizer's settlement costs that are part of the Pfizer Settlement applies toward the policy limits, that amount is not in itself sufficient to exhaust the $17 million limit of the policy. The parties disagree as to whether XLIA's payment of Pfizer's defense costs for defending the DUK Claims or of Pfizer's attorney's fees in the *Pfizer v. Stryker* action also apply toward the policy limits. XLIA contends that these costs apply because they are covered under the policy. Stryker contends that they do not apply because they are consequential damages for XLIA's breach of its duty to defend.

---

[3] Under the policy, the liability limit is $15 million after a $2 million self-insured retention. However, the Court determined that XLIA is not entitled to the self-insured retention because it breached its duty to defend Stryker. (Dkt. No. 949, 01/04/2008 Op. 12-18.)

[4] This amount includes prejudgment interest. None of the parties contends that this portion of the settlement applies toward the policy limit.

This Court held in *Stryker II* that XLIA was required, as part of the Insured Contract coverage in the policy, to indemnify Stryker for the liabilities that Stryker assumed under an Asset Purchase Agreement with Pfizer. (*Stryker II*, Dkt. No. 161, 01/08/2009 Am. Op. 9-15.) Because Stryker's assumed liabilities include an obligation to indemnify and defend Pfizer, the Court held that Stryker (and therefore XLIA) assumed liability for Pfizer's defense costs for defending the DUK Claims. (*Id.* at 14-15.) Pfizer's attorney's fees in *Pfizer v. Stryker* are also covered under XLIA's policy because, according to the parties, there is a fee-shifting clause in the Asset Purchase Agreement.

Stryker contends that Pfizer's defense and prosecution costs do not exhaust the policy limits because they are consequential damages for XLIA's breach of its duty to defend the DUK Claims. Under Michigan law, consequential damages do not erode the limits of an insurance policy. *See Stockdale v. Jamison*, 330 N.W.2d 389, 392-93 (1982) ("An insurer's duty to defend is independent of its duty to pay, and damages for breach of that duty are not limited to the face amount of the policy. . . . [W]e do not see any justification for a special rule limiting the amount of damages recoverable for an insurer's failure to defend or any reason why it should not be held to be responsible, just as any other party to a contract who fails to perform it, for all the loss arising naturally from the breach."). The Court has already determined that XLIA breached its duty to Stryker to defend the DUK Claims brought against Pfizer. (*Stryker II*, Dkt. No. 161, 01/08/2009 Am. Op. 17.) One consequence of this breach is that Pfizer, rather than XLIA, defended the DUK Claims. Had XLIA undertaken

7

the defense of these claims, there is no dispute that such costs would have been excluded from the policy limits. The policy provides that "all expenses [XLIA] incur[s] in the defense of any suit or claim are in addition to [the] Limits of Insurance." (XLIA Policy § II.B.) Now that XLIA has paid for these costs, it cannot preclude Stryker from recovering additional amounts under the policy by applying these costs to the policy limits. *See Jim-Bob, Inc. v. Mehling*, 443 N.W.2d 451, 463 (Mich. Ct. App. 1989) ("It is well settled that the appropriate measure of damages for breach of a contract . . . is that which would place the injured party in as good a position as it would have been in had the promised performance been rendered."). Because the Court finds that these costs do not apply to the policy limit, the relief sought by XLIA is not warranted because it has not shown that the remainder of the Pfizer Settlement exhausts its policy.

Even assuming that the Pfizer Settlement partially exhausts XLIA's policy, to avoid liability for the settlement costs in *Stryker I*, XLIA must contend with the rule in *Capitol Reproduction, Inc. v. Hartford Insurance Co.*, 800 F.2d 617 (6th Cir. 1986). The Court has already determined, in *Stryker I* and *Stryker II*, that *Capital Reproduction* and the Michigan cases that it cites are the controlling law with respect to the applicability of an insurer's policy limits in circumstances where the insurer has breached its duty to defend:

> Under Michigan law, when an insurer fails to fulfill its duty to defend an insured, it becomes liable for the full extent of the judgment against the insured. "If the insurer had an obligation to defend and failed to fulfill that obligation, then, like any other party who fails to perform its contractual obligation, it becomes liable for all foreseeable damages flowing from the breach . . . . An insurer's duty to defend is independent of its duty to pay, and damages for breach of that duty are not limited to

> the face amount of the policy." *Stockdale v. Jamison*, 416 Mich. 217, 330 N.W.2d 389, 392 (1982). One basis for this rule seems to lie in the law's reluctance to allow the insurer to benefit from the uncertainty created when it renounces its duty. Thus, an insured is not "required to prove that the amount of the judgment in excess of the policy limits was caused by the failure of the insurer to provide a reasonable defense, since if the insurer had provided a reasonable defense as required by its contract, there would be no need for anyone to attempt to offer proofs on that illusive subject." *Maynard v. Sauseda*, 121 Mich. App. 644, 329 N.W.2d 774, 779 (1982). This general rule applies as well to settlements. *Detroit Edison v. Michigan Mut. Ins. Co.*, 102 Mich. App. 136, 144, 301 N.W.2d 832 (1980).

*Capitol Reprod.*, 800 F.2d at 624. In both *Stryker I* and *Stryker II*, this Court held that the rule in *Capitol Reproduction* precludes XLIA from invoking the self-insured retention limit in its policy. Though *Capitol Reproduction* specifically involved the applicability of a self-insured retention limit, the Court cannot meaningfully distinguish a self-insured retention limit from any other type of policy limit for purposes of applying the general rule that, where the insurer breaches its duty to defend, it becomes liable for the "full extent of the judgment" or the full settlement, regardless of "the face amount of the policy." *Id*.

XLIA argues that the settlement costs in *Stryker I* are not consequential damages exempt from the policy limit because the settlements were not caused by XLIA's breach of the duty to defend, but this argument runs counter to *Capitol Reproduction*, wherein the court implicitly acknowledged that the full amount of a judgment or settlement binding the insured following breach of the insurer's duty to defend may not be entirely the result of that breach. *See id*. Nevertheless, the court indicated that an insurer that breaches its duty to defend is liable for the full judgment and settlement costs in excess of policy limits because the insured should not be required to "prove that the amount . . . in excess of the policy limits was caused

9

by the failure of the insurer to provide a reasonable defense . . . ." *Id.* The same concern applies here. Stryker should not be required to prove that the portion of the settlement costs in *Stryker I* that exceeds XLIA's policy limits was caused by the failure of XLIA to provide a reasonable defense.

Finally, XLIA argues that Stryker will not suffer any "loss" or damage by costs in excess of XLIA's policy limits because TIG's coverage remains available to cover those costs. However, this argument assumes that XLIA has properly exhausted its policy limit. To recover excess settlement costs in *Stryker I* from TIG, Stryker would, in effect, be required to make the same type of showing that *Capitol Reproduction* indicates an insured should not be required to make, *i.e.* what the portion of the settlement costs applied to XLIA's policy limits were not caused by XLIA's breach. Moreover, XLIA has not offered any basis or authority for requiring or allowing Stryker to, in effect, recover from TIG amounts exceeding XLIA's policy for which TIG would not otherwise be liable in the absence of XLIA's breach. *See Stockdale*, 330 N.W.2d at 392 ("If the insurer had an obligation to defend and failed to fulfill that obligation, then, like any other party who fails to perform its contractual obligations, it becomes liable for all foreseeable damages flowing from the breach.").

For the foregoing reasons, XLIA's motion for partial summary judgment must be denied. The Court declines to recharacterize it as a motion for reconsideration or for relief from judgment because XLIA has not shown that such relief is warranted.

## II.

With respect to Plaintiffs' motion for entry of final judgment, Stryker seeks to add to the Court's previous partial judgment an amount of attorney's fees that is not in dispute by the parties. Thus, the Court will grant Plaintiffs' motion for entry of final judgment. The Court notes that, subsequent to filing its motion, on September 21, 2009, Plaintiffs filed a notice of corrected proposed judgment contending that the amount in its original proposed judgment is incorrect because the amount of one of the settlement claims was improperly calculated. (Dkt. No. 1090.) While XLIA has not responded to this "notice," the Court notes that this correction makes the total amount of settlement costs consistent with the amount in this Court's earlier opinion and order granting partial judgment. (Dkt. No. 1055, 12/15/2008 Op. 3.) XLIA has not objected to any other amounts in the proposed final judgment. The Court will, therefore, use the corrected amount in its order. The Court also notes that, while it has awarded Plaintiffs prejudgment interest, Plaintiffs' motion for entry of final judgment does not include a calculation of that amount. The Court will, therefore, enter judgment on the amount in Plaintiffs' motion; in the event that the parties disagree on the calculation of prejudgment interest, a party should file a motion pursuant to Rule 60(a) of the Federal Rules of Civil Procedure. *See Pogor v. Makita U.S.A., Inc.*, 135 F.3d 384, 388 (6th Cir. 1998).

An order and final judgment will be entered that are consistent with this opinion.


Dated: October 7, 2009         /s/ Robert Holmes Bell
                               ROBERT HOLMES BELL
                               UNITED STATES DISTRICT JUDGE