UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


STRYKER CORPORATION and
HOWMEDICA OSTEONICS CORP.,

        Plaintiffs,

                                       File No. 4:01-CV-157

v.

                                       HON. ROBERT HOLMES BELL

XL INSURANCE AMERICA INC.,
formerly known as WINTERTHUR
INTERNATIONAL AMERICA
INSURANCE COMPANY, et al.,

        Defendants.

_____/

# **O P I N I O N**

This matter is before the Court on a motion filed by Plaintiffs Stryker Corporation

("Stryker") and Howmedica Osteonics Corporation, a subsidiary of Stryker, to amend or

correct the final judgment pursuant to Rules 59(e) and 60(a) of the Federal Rules of Civil

Procedure (Dkt. No. 1098), and Defendant XL Insurance America Inc.'s motion for relief

from judgment pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure (Dkt. No.

1114).  Also before the Court is Defendant's motion to strike and objection to Plaintiffs'

proposed bill of costs.  (Dkt. No. 1111.)

# I. Background

This diversity action arises out of an insurance coverage dispute between Plaintiffs and Defendant. After Plaintiffs were sued by third-parties for injuries related to products manufactured and/or sold by Plaintiffs, Plaintiffs sought coverage from Defendant under a policy obligating Defendant to defend and indemnify Plaintiffs for all such claims arising out of the same "batch" of defective products. Defendant refused to defend or indemnify the claims, and Plaintiffs eventually settled with the third-parties. Plaintiffs brought this action to enforce the insurance policy and to seek compensation for their defense costs and costs of settlement of the third-party claims. During the first stage of litigation, the Court determined that the third-party claims were covered by the policy and that Defendant had breached its duty to defend and indemnify the third-party claims.

During the second stage of the litigation, the damages phase, Plaintiffs moved for a determination as to their entitlement to interest pursuant to the interest provisions of Michigan's Uniform Trade Practices Act, Mich. Comp. Laws § 500.2006. (Dkt. No. 1034.) In response, Defendant argued that Plaintiffs were not entitled to interest under that statute because: (1) § 500.2006 applies to a different type of insurance, one relating to property damage rather than a liability policy; (2) Plaintiffs did not provide a satisfactory proof of loss as required by § 500.2006(4); (3) the insurance claims were reasonably in dispute, and § 500.2006 does not permit recovery of interest on claims that are reasonably in dispute; and, (4) Plaintiffs are not entitled to interest accruing from the date that Defendant received notice

2

of the first third-party claim in the same "batch" of claims; rather, interest should accrue, if at all, in relation to notice of each of the individual claims. (*See* Dkt. No. 1039, Def.'s Resp. to Mot. for Partial Summ. J.)

On December 15, 2008, the Court granted Plaintiffs' motion, in part, and held that Plaintiffs are entitled to twelve percent interest under Mich. Comp. Laws § 500.2006 on the judgment, accruing in relation to the date of notice of each individual claim covered by the policy rather than the date of notice of the first claim in the "batch" of claims. (Dkt. Nos. 1055, 1056.) The Court rejected Defendant's arguments that § 500.2006 does not apply to liability policies and that Plaintiffs had not provided a satisfactory proof of loss. (Dkt. No. 1055, 12/15/2008 Op. at 9-12.)

As to Defendant's argument that § 500.2006 does not apply to claims that are reasonably in dispute, the Court held that, based on the Michigan Court of Appeals decision in *Griswold Properties, L.L.C. v. Lexington Insurance Co.*, 741 N.W.2d 549 (Mich. Ct. App. 2007) ("*Griswold II*"), and the Michigan Supreme Court's statements in *Yaldo v. North Pointe Insurance Co.*, 578 N.W.2d 274 (Mich. 1998), the Michigan Supreme Court would likely interpret the "reasonably in dispute" language in § 500.2006(4) to apply to third-party tort claimants, not the insured under the contract of insurance.[1] Applying this interpretation, the Court determined that Plaintiffs are entitled to interest under Mich. Comp. Laws

---

[1]The Sixth Circuit subsequently interpreted Mich. Comp. Laws § 500.2006(4) in similar fashion in *Alticor, Inc. v. National Union Fire Insurance Co. of Pennsylvania*, 345 F. App'x 995, 1001-02 (6th Cir. 2009) (unpublished).

§ 500.2006 because, even if the insurance claims were reasonably in dispute, Plaintiffs are insured parties directly entitled to benefits under the contract of insurance, not third-party tort claimants. (Dkt. No. 1055, 12/15/1008 Op. 7-9.)

On October 7, 2009, the Court entered an opinion, order, and final judgment against Plaintiffs in the amount of $13,903,660,[2] reiterating Plaintiffs' entitlement to interest under Mich. Comp. Laws § 500.2006, but directing the parties to file a motion to amend the judgment for purposes of calculating the amount of interest. (Dkt. Nos 1092, 1094.) On October 15, 2009, Defendant filed a notice of appeal to the Court of Appeals for the Sixth Circuit, and this Court stayed enforcement of the judgment pending determination of Defendant's appeal. (Dkt. Nos. 1095, 1100.) On October 21, 2009, Plaintiffs filed their motion pursuant to Rules 59(e) and 60(a) of the Federal Rules of Civil Procedure to amend judgment to include a calculation of interest under Mich. Comp. Laws § 500.2006(4) and to include prejudgment interest under Mich. Comp. Laws § 600.6013(8). (Dkt. No. 1098.) On January 7, 2010, the Sixth Circuit stayed the appeal pending resolution of the outstanding motions before the Court. On February 4, 2010, Defendant filed a motion for relief from judgment pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, asserting that Plaintiffs are not entitled to interest under Mich. Comp. Laws § 500.2006. (Dkt. No. 1114.)

---

[2]This amount includes approximately $7.6 million in costs paid by Plaintiffs to settle the claims by the injured third parties, and $6.2 million in costs paid by Plaintiffs to defend the third-party claims. (*See* Dkt. No. 1092, 10/07/2009 Op. at 3.)

## II. Analysis

### A. Interest under Mich. Comp. Laws § 500.2006

Plaintiffs and Defendant have both filed motions that address the extent to which Plaintiffs are entitled to interest under Mich. Comp. Laws § 500.2006. That statute allows a claimant under an insurance policy to recover twelve percent interest for the delay in payment of an insurance claim. *See id.* The purpose of the statute is to penalize dilatory action on the part of insurers and to encourage prompt payment of claims. *Medley v. Canady*, 337 N.W.2d 909, 911 (Mich. Ct. App. 1983).

### *(1) Plaintiffs' Motion to Amend Judgment*

Plaintiffs' motion to amend the judgment seeks to add a calculation of interest in accordance with the Court's prior ruling that Plaintiffs are entitled to twelve percent interest under § 500.2006 on the amount of the final judgment. Depending upon the circumstances, post-judgment motions for interest on damages may be brought pursuant to Rule 59(e) or Rule 60(a) of the Federal Rules of Civil Procedure. *Pogor v. Makita U.S.A., Inc.*, 135 F.3d 384, 388 (6th Cir. 1998). "If the language of [the judgment to be amended] awards interest as required by law but leaves the actual calculations for later," a motion to add the interest is brought pursuant to Rule 60(a). *Pogor*, 135 F.3d at 388. However, "when a district court's original judgment does not mention an award of interest, then a later motion to fix interest would be governed by the rationale found in *Osterneck*," and assigned "to the dominion of Rule 59(e) . . . as the motion would amount to an original request for interest."

*Id.* (referring to *Osterneck v. Ernst & Whinney*, 489 U.S. 169 (1989)).

Plaintiffs' motion for a calculation of interest under § 500.2006 is properly construed as a motion pursuant to Rule 60(a) because this Court indicated in its judgment that Plaintiffs are entitled to interest on the judgment pursuant to Mich. Comp. Laws § 500.2006, "accruing 60 days after the date that Defendant received notice of each claim covered by the insurance policy and continuing until the date of entry of this judgment." (Dkt. No. 1094.) Rule 60(a) allows a party to correct a "clerical mistake or a mistake arising form oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). Generally, a motion to add a calculation of interest pursuant to Rule 60(a) does not "seek to alter or amend the judgment, but simply ask[s] the court to insert the omitted particulars of the prejudgment interest award." *Pogor*, 135 F.3d at 388.

Because Defendant has filed a notice of appeal, the Court must consider the effect of Defendant's notice of appeal on the Court's jurisdiction to consider Plaintiffs' motion. Rule 60(a) does not specify a time limit for bringing a motion, but provides that, "after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave." *Id.* In contrast, Rule 59(e) contains no such limitation. *See* Fed. R. Civ. P. 59(e).

Defendant filed its notice of appeal before Plaintiffs filed their motion, and the appeal has been docketed. However, the Court of Appeals has stayed the appeal pursuant to Rule 4(a)(4)(A) of the Federal Rules of Appellate Procedure. Rule 4(a)(4)(A) provides that if a

party timely files a motion for relief under Rule 60 within ten days of the judgment, or a timely motion to alter or amend judgment under Rule 59, then the time to file an appeal "runs for all parties from the entry of the order disposing of the last such remaining motion." Fed. R. App. P. 4(a)(4)(A)(iv), (vi). Moreover,

> [i]f a party files a notice of appeal after the court announces or enters a judgment--but before it disposes of any motion listed in Rule 4(a)(4)(A)--the notice *becomes effective* to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered.

Fed. R. App. P. 4(a)(4)(B) (emphasis added). Plaintiffs' motion, whether it is characterized as a motion to alter or amend judgment pursuant to Rule 59, or a motion pursuant to Rule 60 filed within ten days of the judgment, is a motion "listed in Rule 4(a)(4)(A)." *See* Fed. R. App. P. 4(a)(4)(A)(iv), (vi). Thus, by operation of Rule 4(a)(4) of the Federal Rules of Appellate Procedure, Plaintiff's notice of appeal is not effective, and the Court maintains jurisdiction in this matter until the Court disposes of the motions identified in Rule 4(a)(4)(A). *See O'Sullivan Corp. v. Duro-Last, Inc.*, 7 F. App'x 509, 519 (6th Cir. 2001) ("When a party has filed a timely motion to alter or amend a judgment after a notice of appeal has been filed, the district court still retains jurisdiction to consider the motion.").

Plaintiffs have provided a calculation of interest in accordance with the terms of the judgment, and Defendant raises the following objections: (1) interest should not begin to run with respect to defense costs until those costs were incurred by Plaintiffs; (2) interest on settlement costs should not begin to run until the settlement costs were fixed by settlement; and (3) interest should not apply to costs exceeding the limits of the policy. (Dkt. No. 1104.)

First, the Court must consider whether Defendant's objections are within the scope of matters to be considered on a motion pursuant to Rule 60(a). "The basic purpose of the rule is to authorize the court to correct errors that are mechanical in nature that arise from oversight or omission." *In re Walter*, 282 F.3d 434, 440 (6th Cir. 2002). "The rule does not, however, authorize the court to revisit its legal analysis or otherwise correct an 'error[ ] of substantive judgment.'" *Id.* (quoting *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 364 (6th Cir. 1990)).

When Plaintiffs initially moved for an award of interest under § 500.2006, they moved for interest on the "full amount of the final judgment," running from the date that Plaintiffs first notified Defendant of the claims covered by the Policy (Dkt. No. 1034, Pl.'s Mot. for Partial Summ. J.), and the Court granted this motion in part, holding that interest runs sixty days after notice of each claim. (Dkt. No. 1055, 12/15/2008 Op.) The Court's opinion did not distinguish between interest on settlement costs or interest on defense costs. When Plaintiffs subsequently moved for entry of final judgment, they submitted a proposed final judgment that included an exhibit with the dates for which interest would begin to accrue with respect to each claim, and this exhibit did not distinguish between settlement costs or defense costs for purposes of calculating when interest would accrue for each claim. (Dkt. No. 1082.) The Court granted Plaintiffs' motion for entry of final judgment and subsequently entered a judgment that is consistent with its previous opinion and order awarding interest under § 500.2006. (Dkt. No. 1094, Final J.)

Defendant's objections (1) and (2) are outside the scope of matters to be considered under Rule 60(a) because they allege errors of substantive judgment rather than mechanical errors of oversight or omission, and they seek to alter Plaintiffs' substantive right to recovery of interest, namely, the time period in which interest on Plaintiffs' damages should accrue. These objections are procedurally improper because Defendant has not moved the Court to amend its judgment.[3]

To the extent Defendant's *response* to *Plaintiffs' motion* could be construed as a motion to amend the judgment pursuant to Rule 59(e), it is not timely. Under the rules in effect at the time, a motion pursuant to Rule 59(e) had to be filed within ten (business) days after the entry of judgment. *See* Fed. R. Civ. P. 59(e) (2007). Defendant's response to Plaintiffs' motion (Dkt. No. 1104) was filed on November 4, 2009, four weeks after the Court entered judgment.

To the extent Defendant's response could be characterized as a motion for relief from judgment under one of the subsections in Rule 60(b), the Court declines to characterize it as such because Defendant's response provides no direction to the Court or notice to the parties as to the applicable basis in Rule 60(b) under which Defendant would seek such relief. The rule itself requires a party to make a "motion" for relief from judgment. *See* Fed. R. Civ. P. 60(b) (stating that a court can relieve a party from a judgment "[o]n motion"). The Court is

---

[3]Defendant has filed a separate motion to challenge the interest award, pursuant to Rule 60(b)(6), but that motion raises separate issues, and will be addressed in section II.A(2) of this opinion, *infra*.

not empowered to grant such relief *sua sponte*. *Eaton v. Jamrog*, 984 F.2d 760, 762 (6th Cir. 1993).

Plaintiffs' motion pursuant to Rule 59(e) does not open up the Court's judgment to amendment in favor of Defendant because it addresses a different issue, namely, Plaintiffs' entitlement to interest under Mich. Comp. Laws § 600.6013(8). *Cf. McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 520-21 (7th Cir. 1993) ("Although a timely postjudgment motion opens up the earlier judgment and even permits the court to enlarge on the issues delineated by the motion . . . the non-moving party may not then make its own untimely request for alteration of the judgment on a wholly independent ground.") (citations omitted). Therefore, notwithstanding any potential merit in Defendant's objections (1) and (2), the Court declines to consider them because they would require the Court to amend its earlier judgment, and Defendant has not timely moved the Court for such an amendment.[4]

Defendant's objection (3) is arguably different from its other objections with respect to what may be considered under Rule 60(a). In that objection, Defendant indicates that the right to interest under Mich. Comp. Laws § 500.2006 is limited by the amount of coverage available in the policy. Mich. Comp. Laws § 500.2006(4) provides, in part, that "[i]f the loss exceeds the limits of insurance coverage available, interest shall be payable based upon the limits of insurance coverage rather than the amount of the loss." *Id.* Defendant indicates that

---

[4]Moreover, Defendant's objection (2) regarding interest on settlement costs is addressed by Defendant's motion for relief from judgment. *See* Section I.A(2), *infra*.

its policy has a limit of $15 million in coverage and that it has settled a third-party claim covered by the policy (the "Pfizer Settlement"), a claim at issue in another matter before the Court, *Stryker Corp. v. XL Ins. Am. Inc.* ("*Stryker II*"), No. 1:05-CV-51 (W.D. Mich.). (*See* Dkt. No. 1092, 10/07/2009 Op. at 3.). Defendant argues that, because approximately $12.8 million of the Pfizer Settlement partially exhausts the limits of its policy, interest should accrue under § 500.2006 only on the amount of the judgment in this matter that does not exceed $2.2 million, the remaining amount of coverage available in the insurance policy.[5]

When the Court awarded interest under § 500.2006, and later entered the final judgment, it did not consider whether the Pfizer Settlement would impose a limit on Plaintiffs' recovery of interest under § 500.2006, and the Court did not intend to award interest in an amount that exceeds what is permitted by that statute. Nevertheless, the Court concludes that Defendant's objection (3) also raises an issue that is not the proper subject of consideration on Plaintiffs' motion pursuant to Rule 60(a). Defendant's objection raises more than merely a mechanical or clerical mistake in the calculation of interest; rather, it questions Plaintiffs' substantive right to recovery under § 500.2006. The reason the Court did not consider this issue is because it was not raised by Defendant before the judgment issued, within the time period for amendment of the judgment permitted by Rule 59(e), or

---

[5]The Court has determined that, notwithstanding the partial exhaustion of Defendant's policy by the Pfizer Settlement, Defendant is liable for payment of the full amount of the judgment in this matter, even the amounts exceeding its policy limits, as consequential damages for Defendant's breach of its duty to defend. (*See* Dkt. No. 1092, 10/07/2009 Op. at 6-10.)

on motion pursuant to Rule 60(b). Plaintiffs' motion pursuant to Rule 60(a) is not the proper means for adjudicating Plaintiffs' substantive rights, or for amending substantive aspects of the Court's earlier judgment in favor of Defendant.

Even if the Court were to entertain Defendant's objection (3), it would not have the effect that Defendant suggests. Assuming *arguendo* that Defendant's policy limit is $15 million,[6] and that the Pfizer Settlement partially exhausts the limits of the insurance policy, at best Defendant would be entitled to restrict Plaintiffs' recovery of interest on the judgment *after* Defendant entered into that settlement. In other words, Plaintiffs would still be entitled to recovery of interest under § 500.2006 on the damages awarded in this matter from the time that interest would otherwise begin to run under § 500.2006 until the time that Defendant paid the Pfizer Settlement. To hold otherwise would absolve Defendant of its liability for interest for the entire time that it delayed payment of benefits under the policy, and would thwart the purpose of § 500.2006, which is to encourage prompt payment of claims. *See Medley v. Canady*, 337 N.W.2d 909, 911 (Mich. Ct. App. 1983).

---

[6]Plaintiffs erroneously contend that the policy limit is $17 million because the Court has held that Defendant is not entitled to the $2 million self-insured retention limit in the policy due to Defendant's failure to defend, per the rule in *Capitol Reproduction, Inc. v. Hartford Insurance Co.*, 800 F.2d 617, 624 (6th Cir. 1986). *See also Stockdale v. Jamison*, 330 N.W.2d 389, 392 (Mich. 1982). However, Plaintiffs' entitlement to damages above Defendant's policy limit, as consequential damages for Defendant's failure to defend, is an issue distinct from Plaintiffs' entitlement to interest under Mich. Comp. Laws § 500.2006. The rule in *Capitol Reproduction* does not override the limits on recovery of interest under Mich. Comp. Laws § 500.2006.

Accordingly, the Court finds that it lacks the power to consider Defendant's objections in connection with Plaintiffs' motion pursuant to Rule 60(a). The Court finds no fault in Plaintiffs' motion for calculation of interest under Mich. Comp. Laws § 500.2006 as such. However, the motion will be denied without prejudice because the amount must be calculated according to the limitations necessitated by Defendant's Rule 60(b)(6) motion, which is discussed in the next section.

### *(2) Defendant's Rule 60(b)(6) motion*

Defendant filed its motion for relief from judgment pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure on February 4, 2010. Defendant contends in its motion that Plaintiffs are not entitled to interest under Mich. Comp. Laws § 500.2006 because a recent decision of the Michigan Court of Appeals, *Auto-Owners Insurance Co. v. Ferwerda Enterprises, Inc.,* --- N.W.2d ---, No. 277574, 2010 WL 322986 (Mich. Ct. App. Jan. 28, 2010), has changed the law regarding the applicability of that statute.

Because Defendant has filed a notice of appeal, the Court must consider whether it has jurisdiction to consider Defendant's motion. Unlike Plaintiffs' motion pursuant to Rule 59(e) and Rule 60(a), Defendant's motion is not listed in Rule 4(a)(4)(A) of the Federal Rules of Appellate Procedure as a motion that extends the time period for filing a notice of appeal. However, the Court concludes that it retains jurisdiction to consider Defendant's motion because *Plaintiffs'* motion is listed in Rule 4(a)(4)(A), and it remains pending. Rule 4(a)(4)(A) operates to extend the time for appeal "for all parties" when "a party" files a listed

motion.  Fed. R. App. P. 4(a)(4)(A).  Moreover, Rule 4(A)(4)(B) states that the notice of appeal is not "effective" until the Court disposes of the last of the motions listed in Rule 4(A)(4)(A).  Fed. R. App. P. 4(a)(4)(B).  Thus, because Defendant's notice of appeal is not effective for all parties, jurisdiction lies with the Court to consider all timely-filed motions, not just the motions listed in Rule 4(a)(4)(A), until the Court disposes of the motions listed in that Rule.

At issue in Defendant's motion is whether Plaintiffs should be required to show that Defendant's liability for the insurance claims at issue was not reasonably in dispute in order to claim interest under Mich. Comp. Laws § 500.2006.  That statute provides, in relevant part:

> If benefits are not paid on a timely basis the benefits paid shall bear simple interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum, if the claimant is the insured or an individual or entity directly entitled to benefits under the insured's contract of insurance. *If the claimant is a third party tort claimant*, then the benefits paid shall bear interest from a date 60 days after satisfactory proof of loss was received by the insurer at the rate of 12% per annum *if the liability of the insurer for the claim is not reasonably in dispute, the insurer has refused payment in bad faith and the bad faith was determined by a court of law*. The interest shall be paid in addition to and at the time of payment of the loss. If the loss exceeds the limits of insurance coverage available, interest shall be payable based upon the limits of insurance coverage rather than the amount of the loss. If payment is offered by the insurer but is rejected by the claimant, and the claimant does not subsequently recover an amount in excess of the amount offered, interest is not due. Interest paid pursuant to this section shall be offset by any award of interest that is payable by the insurer pursuant to the award.

Mich. Comp. Laws § 500.2006(4) (emphasis added). According to the plain language of the statute, the "reasonably in dispute" limitation applies to a "third party tort claimant"; it does not apply to a claimant that is an "insured . . . directly entitled to benefits under the insured's contract of insurance." *See id.*; *Griswold Properties, L.L.C. v. Lexington Ins. Co.*, 741 N.W.2d 549, 557 (Mich. Ct. App. 2007) ("*Griswold II*") (adopting the conclusion of *Griswold Properties, L.L.C. v. Lexington Ins. Co.*, 740 N.W.2d 659 (Mich. Ct. App. 2007) ("*Griswold I*")). In other words, the insured under a contract of insurance is entitled to interest under § 500.2006 for late payment of claims, *even if* the underlying insurance claim was reasonably in dispute. *Id.*

Because this is a diversity action, the Court "applies the law of the forum state and, in the absence of direct state court precedent, must make its best prediction as to how the highest state court would resolve the issues presented." *Travelers Prop. Cas. Co. of Am. v. Hillerich & Bradsby Co., Inc.*, 598 F.3d 257, 264 (6th Cir. 2010); *see also Garden City Osteopathic Hosp. v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir. 1995) (noting, for diversity cases, that if "the state's highest court has not decided the applicable law, then the federal court must ascertain the state law from 'all relevant data,'" which includes "state appellate court decisions" and "the state's supreme court *dicta*" (quoting *Bailey v. V & O Press Co.*, 770 F.2d 601, 604 (6th Cir. 1985))).

Following the rule stated in *Yaldo* and *Griswold II*, this Court previously concluded that, because Plaintiffs are insureds under the contract of insurance rather than third-party tort

claimants, they are entitled to interest under § 500.2006 even if the insurance claims were reasonably in dispute. Defendant contends that the rule in *Griswold II* has been limited by *Ferwerda*. *See Auto-Owners Ins. Co. v. Ferwerda Enters., Inc.* --- N.W.2d ---, No. 277574, 2010 WL 322986 (Mich. Ct. App. Jan. 28, 2010). For the reasons that follow, the Court agrees that *Ferwerda* clarifies the application of § 500.2006 and limits Plaintiffs' entitlement to interest, but does not agree that it disqualifies Plaintiffs from all relief under § 500.2006. Plaintiffs are entitled to accrual of interest under that statute from the time that they settled the third-party claims.

In *Yaldo*, the Supreme Court of Michigan posited that the "not reasonably in dispute" language in § 500.2006(4) applies to third-party tort claimants, not to the insured under the insurance policy. *Yaldo v. North Pointe Ins. Co.*, 578 N.W.2d 274, 277 n.4 (Mich.1998). At issue in that case was the applicability of another interest statute, Mich. Comp. Laws § 600.6013. *See id.* at 275. In response to the insurer's arguments regarding the interpretation of that statute, the court noted that the "express terms [of § 500.2006(4)] indicate that the ["reasonably in dispute"] language applies only to third-party tort claimants." *Id.* at 277 n.4. The Court stated, "Where the action is based solely on contract, the insurance company can be penalized with twelve percent interest, even if the claim is reasonably in dispute." *Id.*

In *Arco Industries Corp. v. American Motorists Insurance Co.*, 594 N.W.2d 74 (Mich. Ct. App. 1998) ("*Arco Industries IV*"), the Michigan Court of Appeals determined that the

Michigan Supreme Court's statements in *Yaldo* were non-binding dicta, and that an insurer is not liable for interest under § 500.2006 for claims that are reasonably in dispute. *Id.* at 75-76. After *Arco Industries IV*, the Michigan Court of Appeals considered claims in three consolidated cases brought by first-party insureds against their insurers. *Griswold I,* 740 N.W.2d at 662. The court in *Griswold I* agreed with the reasoning in *Yaldo* that a first-party insured is not subject to the reasonably in dispute language in § 500.2006(4), but the court determined that it was bound by its previous decision in *Arco Industries IV* to hold otherwise. *Id.* at 662-63. The court declared a conflict to reconcile the statements in *Yaldo* and the holding in *Arco Industries IV*. *Id.* at 663. In a special conflicts panel decision, the court in *Griswold II* overruled *Arco Industries IV*, held that the discussion of § 500.2006 in *Yaldo* is not dictum and that the reasonably in dispute limitation does not apply to the insured under the policy. *Griswold II*, 741 N.W.2d at 557.

In *Ferwerda*, the Michigan Court of Appeals considered a dispute between the owner of a hotel ("Holiday Inn") and its liability insurer ("Auto-Owners"). *Ferwerda*, slip op. at 2. After individuals staying at the hotel, the Bronkemas, were injured while using the hotel's facilities, they sued Holiday Inn for damages. *Id.* The insurer for that claim was Auto-Owners. After paying a portion of the Bronkemas' expenses, Auto-Owners brought a declaratory judgment action against Holiday Inn and the Bronkemas. *Id.* at 3. The trial court awarded judgment against Holiday Inn in favor of the Bronkemas for their damages claim. *Id.* Several months later, the court awarded a judgment in the same amount to Holiday Inn

for its contract claim against Auto-Owners. *Id.* at 4. The court also awarded to Holiday Inn and the Bronkemas their attorney's fees for defending the declaratory judgment action, as well as interest under Mich. Comp. Laws § 500.2006 on the amount of the judgment. *Id.* After a remand from the Michigan Supreme Court, the Michigan Court of Appeals reversed the award of interest, reasoning:

> Defendants argue that because their award comes from a breach of contract claim, they are entitled to penalty interest. We disagree with defendants' characterization. In this case, *the breach of contract claim is specifically tied to the underlying third-party tort claim*. Indeed, the trial court was exceptionally clear that the amount of the breach of contract claim exactly matched that of the judgment in the underlying tort claim. The trial court only granted a breach of contract claim award to Holiday Inn because plaintiff had not yet paid the judgment in the underlying tort claim.
>
> This is a wholly different situation than that found in the cases where penalty interest was awarded. [*Griswold*] involved three consolidated claims, all of which involved an insurance company's failure to pay for the direct losses of the insured, as opposed to the non-payment of a third-party claim found in this case. This case involves an issue of first impression to Michigan's jurisprudence. The claim, as evidenced by our prior opinions in these cases, was "reasonably in dispute" and therefore is not an unfair trade practice. . . .

*Ferwerda*, slip op. at 7.

Defendant argues that Plaintiffs' claims in this matter, like the claims in *Ferwerda*, involve the non-payment of third-party claims rather than failure to pay for the direct losses of the insured, and that Plaintiffs' breach of contract claim "is specifically tied to the underlying third-party tort claim." *See id.* Defendant contends that, under *Ferwerda*, when the insured's claim is "tied to" a third-party tort claim, the insurer is not obligated to pay interest under § 500.2006 for claims that are reasonably in dispute.

18

*Ferwerda* should be understood in light of the structure and purpose of § 500.2006 and the specific facts of that case. *Ferwerda* does not discuss in detail what it means for a claim to be "tied to" an underlying tort claim; however, it distinguishes the claim in that case from the claims at issue in *Griswold*. The claims in *Griswold* involved "failure to pay for the direct losses of the insured," to which the reasonably in dispute language does not apply, whereas *Ferwerda* involved "non-payment of a third-party claim." *Id*. This distinction is difficult to reconcile with § 500.2006 because that statute focuses on the identity of the "claimant" rather than the type of losses at issue. According to § 500.2006(4), the "reasonably in dispute" language applies to one type of claimant (a "third-party tort claimant"), and not another (the "insured or an individual or entity directly entitled to benefits under the insured's contract of insurance"). *See* Mich. Comp. Laws § 500.2006(4). The statute does not distinguish between claimants insured for third-party losses and claimants insured for first-party losses. According to the plain language of the statute, Plaintiffs are insured claimants "directly entitled to benefits under [their] contract of insurance." *See id*.

In *Yaldo*, the Michigan Supreme Court recognized that the legislature could impose a higher interest rate on contract claims compared to tort claims because "there is a preexisting relationship between two parties who have signed a written contract. Greater expectations regarding performance and payments are likely to exist when the parties have established their rights and responsibilities before a controversy arises." *Yaldo*, 578 N.W.2d

at 278. This rationale could also apply to § 500.2006 to explain the higher burden on third-party tort claimants seeking an award of penalty interest from a recalcitrant insurer. When the insurer delays payment of a claim by a third party, the third party can bring its own action to recover penalty interest from the insurer under Mich. Comp. Laws § 500.2006. *See, e.g., Medley v. Canady*, 337 N.W.2d 909 (Mich. Ct. App. 1983). When the third party brings its claim against the insured, that claim is "derivatively" a claim for benefits against the insurer for purposes of the statute. *Id.* at 911. But because an insurer is subject to lesser expectations regarding performance and payment with respect to third parties, it stands to reason that the statute does not penalize the insurer for delay affecting the third party, unless the insurer has acted in bad faith to delay payment of a claim that is not reasonably in dispute.

Defendant reads *Ferwerda* more broadly than is necessary, and its interpretation of that opinion fails to give full effect to the purpose of the statute and the rights of the insured under that statute. Significantly, when the trial court in *Ferwerda* awarded Holiday Inn penalty interest on the Bronkemas' claim, the Bronkemas had not been fully paid by anyone, either the insurer or the insured. The Michigan Court of Appeals noted that "[t]he trial court only granted a breach of contract claim award to Holiday Inn because [Auto-Owners] had not yet paid the judgment in the underlying tort claim." *Ferwerda*, slip op. at 7. But instead of awarding Holiday Inn interest for Auto-Owners's failure to pay its *insured*, the court awarded interest to Holiday Inn for "non-payment of a third party." *Id.* In effect, Holiday Inn was awarded interest on behalf of the Bronkemas, but because the Bronkemas were third-

20

party tort claimants rather than insureds under the policy, they were not entitled to recover penalty interest without a showing of bad faith.[7] Thus, the breach of contract claim was "tied to" the Bronkemas' claim in the sense that it was a means to allow the Bronkemas to recover their damages from Auto-Owners, through Holiday Inn. In seeking interest under § 500.2006 on benefits to be paid to the Bronkemas, Holiday Inn was effectively a third-party tort claimant for purposes of that statute, subject to the "reasonably in dispute" limitation.

*Ferwerda* is distinguishable from the instant case because, unlike Holiday Inn, Plaintiffs have settled and paid the third-party claims, and those settlements are part of the judgment for which Plaintiffs seek an award of interest. The court in *Ferwerda* made a point of distinguishing the third-party losses in its case from the direct losses by the insured claimants in *Griswold*. However, when the insured pays the third party's claims, the third party's loss is transferred to the insured, and the insured suffers the consequences of continued delay by the insurer. If the purpose of § 500.2006 is to encourage prompt payment of claims, that purpose is met, in part, with respect to the third party when it receives payment from the insured. But the insurer continues to be obligated to pay the claim; the only difference is that the insured, the contracting party, is the party suffering the consequences of the insurer's continued delay. It would undermine the purpose of

---

[7]According to transcripts from a hearing before the trial court in the *Ferwerda* matter, the attorney for Holiday Inn represented to the court that the interest on the Bronkemas' damages claim would be paid to the Bronkemas. (Dkt. No. 1116, Ex.6, 12/20/2006 Hr'g Tr. 23.)

§ 500.2006(4) to promote timely payment of claims if an insurer could, after its insured has paid the third party's claims, continue to delay payment *to its insured* and be subject to the bad faith standard applicable to third-party tort claimants, or be exempt entirely from a claim for interest by its insured.

Plaintiffs assert that they are entitled to interest on the settlements from the moment they notified Defendant of the third-party claims, but Plaintiffs' rule would also undermine the distinction in the statute between the obligations of an insurer to its insured and its obligations to third-party tort claimants. As long as the third party's claim remains unresolved, that party suffers the consequences of the insurer's delay. *Ferwerda* indicates that § 500.2006 does not penalize an insurer for delay in payment to a third party unless the insurer has acted in bad faith. Moreover, Plaintiffs' interpretation would potentially over-penalize the insurer by subjecting it to double-payment of interest under § 500.2006 on a claim by the insured and a separate claim by the third-party claimant.[8] Considering *Ferwerda* and other relevant case law, as well as the structure and purpose of Mich. Comp. Laws § 500.2006, the Court concludes that Plaintiffs are entitled to accrual of interest on the

---

[8]*Ferwerda* might be interpreted either as a rule that only one party, the insured or the third party, is entitled to interest for a given time period, or as a rule that when a third-party claim has not been paid by the insured, the insured must make the same showing of bad faith that a third-party claimant must make. That distinction is not relevant for present purposes because there is no dispute that Plaintiffs have not shown bad faith on the part of Defendant; thus, both rules have the same result in this matter.

settlement costs only after Plaintiffs incurred such costs by settling the claims with the third-party claimants.[9]

Mich. Comp. Laws § 500.2006(4) allows the insurer to pay claims within sixty days after receipt of satisfactory proof of loss. *See id.* The Court held in a previous opinion that Plaintiffs' notice of the third-party claims was satisfactory as a proof of loss; thus, interest under § 500.2006(4) on the settlement costs begins to run with respect to each third-party claim sixty days after Plaintiffs first notified Defendant of the third-party claim, or the date that Plaintiffs settled that claim with the third party, *whichever is later*.

In addition to the amounts paid by Plaintiffs to settle the third-party claims, the judgment in this matter also includes the costs of defense incurred by Plaintiffs for defending the third-party claims. The insurance policy required Defendant to provide a defense; thus, coverage for the cost of a defense is a "benefit" that Plaintiffs were "directly entitled" to receive under the insurance policy. *See Alticor, Inc. v. Nat'l Union Fire Ins. Co. of Penn.*, 345 F. App'x 995, 1001-02 (6th Cir. 2009) (unpublished) (affirming award of interest under § 500.2006 on defense costs). *Ferwerda* does not change the date of accrual of interest for Plaintiffs' costs of defense because the "claimant" for this benefit is, for all purposes, the insured under the contract. No third-party claim is at issue. Accordingly, *Ferwerda* limits

---

[9]This conclusion is also consistent with Defendant's objection (2) in its response to Plaintiffs' motion to amend the judgment that Plaintiffs are entitled to interest running from the dates that Plaintiffs' liability for the third-party claims was fixed by settlement agreement with those parties, because, according to Defendant, it was not obligated to pay Plaintiffs under the indemnification provisions of the policy until Plaintiffs' liability was established.

the accrual of interest under Mich. Comp. Laws § 500.2006, but only with respect to Plaintiffs' settlement costs.

Given that *Ferwerda* limits the extent to which Plaintiffs are entitled to interest, the Court must also consider whether Defendant's motion satisfies the requirements of Rule 60(b)(6) of the Federal Rules of Civil Procedure. A motion pursuant to Rule 60(b) must be made "within a reasonable time" after entry of the applicable judgment or proceeding. Fed. R. Civ. P. 60(c). Defendant's motion was filed on February 4, 2010, within a few months of the Court's judgment, and it relies upon the authority of a new decision of the Michigan Court of Appeals dated January 28, 2010. Thus, it was filed within a reasonable time.

Rule 60(b)(6) permits the Court, in its discretion, to amend a judgment "in extraordinary circumstances." *McDowell v. Dynamics Corp. of Am.*, 931 F.2d 380, 383 (6th Cir. 1991). "A change in decisional law is usually not, by itself, an 'extraordinary circumstance' meriting Rule 60(b)(6) relief." *Blue Diamond Coal Co. v. Trs. of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001). However, "an applicable change in decisional law, coupled with some other special circumstance" can warrant Rule 60(b)(6) relief. *Id.* "The decision to grant Rule 60(b)(6) relief is a case-by-case inquiry that requires the trial court to intensively balance numerous factors including the competing policies of the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of all the facts.'" *Id.* at 529 (quoting *Griffen v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984)).

24

The Court considers *Ferwerda* to be the equivalent of a decisional change in Michigan law. Although *Ferwerda* tends to clarify rather than change Michigan law, Mich. Comp. Laws § 500.2006 lacks clarity with respect to the applicability of the reasonably-in-dispute limitation and the relationship between claims by third-party tort claimants and claims by the first-party insured, as evidenced by the conflict resolved in *Griswold II*. Moreover, decisional law from the Michigan Supreme Court, and from the Michigan Court of Appeals, in this area is scarce. According to the court in *Ferwerda*, it addressed an issue of first impression. *Ferwerda*, slip op. at 7.

Plaintiffs contend that *Ferwerda* is not binding authority in Michigan because the Bronkemas' damages award against Holiday Inn had been vacated by the time that the court of appeals ruled on Auto-Owners's liability for interest on that claim, and it was no longer necessary for the court in *Ferwerda* to rule on the issue of interest. *See id.* at 3 n.2. But according to the opinion, the Bronkemas' damages claim against Holiday Inn was remanded for a new trial; thus, Auto-Owners's liability for interest was still at issue, even though the amount of liability for the underlying claim remained to be determined.[10] *See id.* Moreover, even if the statements in *Ferwerda* are dicta, they remain the best evidence for this Court to

---

[10]According to evidence submitted by Plaintiffs, Holiday Inn settled with the Bronkemas in November of 2009, and Auto-Owners paid the Bronkemas directly to satisfy the settlement. (Dkt. No. 1116, Ex. 8, Attachs. 1, 2.) Under Plaintiffs' interpretation of § 500.2006, Holiday Inn would have been entitled to claim interest from Auto-Owners for its delay in payment to the Bronkemas. *Ferwerda* indicates why such a claim would not be allowed in the absence of a showing of bad faith.

determine how Michigan's highest court would rule if faced with a claim for interest under § 500.2006 based on the non-payment of a third-party claim.

There are also special circumstances that favor relief under Rule 60(b)(6) in this matter. First, although an initial judgment has been entered, its execution has been stayed, and its finality has been suspended by operation of Plaintiffs' motion. *See Overbee v. Van Waters & Rogers*, 765 F.2d 578, 580 (6th Cir. 1985) (extraordinary circumstances existed where the finality of the judgment had been suspended by a motion for a new trial). Only a few months have passed since judgment was entered. *See Ritter v. Smith*, 811 F.2d 1398, 1401-02 (11th Cir. 1987) (finding it significant that the judgment had not been executed and that there was only "minimal delay" between the entry of judgment and the Rule 60(b)(6) motion). In addition, concerns about maintaining the finality of the Court's previous rulings is diminished because the amount of interest that is due to Plaintiffs has not yet been fixed in the judgment. Finally, because this is a diversity action, the Court must consider state decisional law as it exists at the time of entry of its orders. *See Vandenbark v. Owens-Illinois Glass Co.*, 311 U.S. 538, 543 (1941). For the foregoing reasons, therefore, the Court finds that Defendant's motion is timely and that Defendant has satisfied the requirements for relief under Rule 60(b)(6). Accordingly, the Court will grant Defendant's motion, in part, and will apply *Ferwerda* in the manner stated herein.

**B. Prejudgment Interest under Mich. Comp. Laws § 600.6013(8)**

Mich. Comp. Laws § 600.6013(8) allows the prevailing party to recover prejudgment

interest on a money judgment. *Id.* The Court's previous judgment did not mention an award of interest, other than under Mich. Comp. Laws § 500.2006; thus, Plaintiffs' request for prejudgment interest under § 600.6013(8) is properly construed as a request to amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. *See Pogor v. Makita U.S.A., Inc.*, 135 F.3d 384, 388 (6th Cir. 1998).

In their motion, Plaintiffs have provided a calculation of interest under § 600.6013(8) that runs from the date of the filing of the complaint until the date that interest begins to accrue under § 500.2006, in order to avoid double counting of interest under both statutes. *See* Mich. Comp. Laws § 500.2006(4) ("Interest paid pursuant to this section shall be offset by any award of interest that is payable by the insurer pursuant to the award."). Under § 600.6013(8), interest accrues from the date of the filing of the complaint. *See Ayar v. Foodland Distrib.*, 698 N.W.2d 875, 877 (Mich. 2005). Thus, interest starts to run under § 600.6013(8) earlier than under § 500.2006 for third-party claims of which Defendant received notice after Plaintiffs filed their complaint.

Defendant apparently does not object to Plaintiffs' claim of entitlement to, or method of calculation of, interest under Mich. Comp. Laws § 600.6013(8). However, Plaintiffs must submit a revised calculation of interest under § 600.6013(8) because the Court has modified the time in which interest accrues under § 500.2006. Accordingly, Plaintiffs' motion will be granted, in part, with respect to Plaintiffs' entitlement to interest under § 600.6013(8), but will be denied without prejudice with respect to the amount. The Court will amend the

judgment to reflect Plaintiffs' entitlement to interest under § 600.6013(8), but the judgment

will not reflect an amount of interest under either § 500.2006 or § 600.6013(8) unless and

until a revised calculation is submitted to the Court.

## C. Plaintiffs' Proposed Bill of Costs

Finally, Plaintiffs have submitted a proposed bill of costs pursuant to Rule 54(d) of

the Federal Rules of Civil Procedure, which provides that, "[u]nless a federal statute, these

rules, or a court order provides otherwise, costs—other than attorney's fees—should be

allowed to the prevailing party." On November 6, 2009, Plaintiffs filed their first proposed

bill of costs. (Dkt. No. 1105.) On November 9, 2009, Plaintiffs were notified by the Clerk's

office that, although the affidavit attached to Plaintiffs' bill of costs was signed electronically

by Plaintiffs' counsel, the affidavit did not include a scanned copy of the manuscript

signature as required by the Local Rules of Civil Practice and Procedure for the Western

District of Michigan ("Local Rules") for all affidavits. *See* W.D. Mich. LCivR 5.7(d)(iii)(A).

The Local Rules also require that, if the parties cannot agree on costs, a bill of costs must be

filed with the Clerk within thirty days of the entry of judgment. W.D. Mich. LCivR 54.1.

Though the initial bill of costs was filed within thirty days of the judgment, Plaintiffs filed

a corrected bill of costs with the manuscript signature on November 9, 2009, more than thirty

days after entry of the judgment. (Dkt. No. 1106.)

Notwithstanding Defendant's notice of appeal, the Court has jurisdiction to consider

the bill of costs and objections thereto for the same reasons that it has jurisdiction to consider

Defendant's motion pursuant to Rule 60(b)(6). *See* Section II.A(2), *supra*. Defendant argues, first, that Plaintiffs' motion should be stricken and/or rejected because it is not timely. However, Rule 54(d) does not specify a time limit for submitting a bill of costs. *See* Fed. R. Civ. P. 54(d). Plaintiffs' corrected bill of costs did not satisfy the timing requirements of the Local Rules, but the Court has authority to modify any time limit in the Local Rules "[i]n its discretion . . . with or without prior notice or motion." W.D. Mich. LCivR 7.1(c). Accordingly, because Plaintiffs filed a proposed bill of costs that was substantially in compliance with the Local Rules prior to the thirty-day deadline, and because the corrected bill of costs was filed shortly thereafter, the Court extends the thirty-day deadline in the exercise of its discretion and holds that Plaintiffs' corrected bill of costs was timely filed.

Plaintiffs' bill of costs seeks reimbursement for the following:

| Description | Cost |
|---|---|
| Fees of the clerk | $200.00 |
| Fees of court reporters | $49,869.12 |
| Fees and disbursements for printing and witnesses | $6,039.93 |
| Fees for exemplification: | |
|     Preparation and display of electronic evidence | $156,565.30 |
|     Preparation of non-electronic evidence | $2,329.38 |
| **TOTAL:** | **$215,003.73** |

Defendant objects to taxation of the following items in Plaintiffs' bill of costs: (1) $3,929.33 in transcript costs for the depositions of John J. Coen, M.D., Bruce Laubacher, and Alan Lewis Schiller, M.D.; (2) $156,565.30 for preparation and display of electronic evidence; and (3) $544.07 in costs for preparation of an exhibit notebook for trial, to the extent that it duplicates the electronic evidence. (Dkt. No. 1112.)

The Supreme Court has held that 28 U.S.C. § 1920 defines the term "costs" as used in Rule 54(d). *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987). Section 1920 enumerates six categories of costs that may be taxed: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under 28 U.S.C. § 1923; (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.

"The court has broad discretion in allowing or disallowing the particular items listed in § 1920 as costs." *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 405 F.3d 415, 419 (6th Cir. 2005). Courts are bound by the limitations in § 1920, but they may interpret the meaning of the items listed therein. *Id.* The party opposing taxation of costs—in this case, Defendant—bears the burden of persuading the Court that the expenses are either not allowable under § 1920, or that they are not "necessarily obtained for use in the case," if such necessity is required. *Id.* at 420.

*(1) Transcript Costs for Coen, Laubacher, and Schiller.*

Section 1920(2) allows recovery of "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. § 1920(2). Plaintiffs originally sought recovery of $49,869.12 in such fees, and Defendant objects to the fees for transcripts of the depositions of Coen, Laubacher, and Schiller. In response, Plaintiffs have withdrawn their request for fees related to these three deponents. (Dkt. No. 1113, at 10.) Accordingly, the Court will award Plaintiffs' $45,939.79 in such fees. (*See id.*)

*(2) Exemplification Costs for Electronic Evidence.*

Section 1920 of title 28 also allows recovery of "[f]ees for exemplification and the costs of making copies of any materials where the materials are necessarily obtained for use in the case." 28 U.S.C. § 1920(4). The bulk of the costs requested by Plaintiffs are fees paid to Plaintiffs' third-party consultant to assist Plaintiffs in the preparation and presentation of electronic evidence and electronic presentations for use at trial and in connection with motions practice.

This matter was originally scheduled for a jury trial in September of 2005; however, the Court adjourned the trial on September 15, 2005. (Dkt. No. 756.) The Court bifurcated the matter to address liability and damages in separate phases. During the liability phase, the Court held a four-and-a-half day bench trial in January and February of 2007 to determine Defendant's liability. During the damages phase, the Court determined the amount of damages via several motions for summary judgment. (*See* Dkt. No. 949, 01/04/2008 op.; Dkt. No. 1055, 12/15/2008 op.; Dkt. No. 1092 10/07/2009 op.)

Plaintiffs' bill of costs includes fees for preparing presentations for the jury trial originally scheduled for September of 2005, the bench trial in 2007, and argument in connection with motions filed in 2007 through 2009. (Dkt. No. 1106, at 7-8.) In response to Defendant's objections, Plaintiffs have provided copies of invoices from the consultant showing the work performed, the hours, and the amounts billed. (*See* Dkt. No. 1113, Ex. 1.) According to the invoices, the consultant charged an hourly rate of approximately $125 to $175 per hour for its services, which included *inter alia*: editing multiple versions of a PowerPoint presentation with graphics and animation, designing a timeline, meeting with attorneys to discuss the presentations, trimming and editing video clips, scanning, formatting, barcoding, and uploading exhibits, programming a CD/DVD, conducting a "courtroom survey" and "court rehearsal," "visiting [the] courtroom," and meeting with the "ba[i]liffs," "setup of equipment in court, and "[i]n court presentation." (*Id.*)

The Sixth Circuit addressed exemplification costs in *BDT Products, Inv. v. Lexmark International, Inc.*, 405 F.3d 415 (6th Cir. 2005), wherein it affirmed a district court's decision to tax costs for "electronic scanning and imaging of documents" as exemplification costs. *Id.* at 420. The court also affirmed as part of transcript costs "charges for video services, rough disk, interactive realtime, video tapes, and the synchronization of the video and deposition transcripts." *Id.* at 419-20. Though the court allowed taxation of the costs for converting non-electronic evidence into electronic form, it did not address the kinds of costs sought by Plaintiffs, which include the creation of animations, diagrams and images for

electronic presentations, and assistance with the setup and use of equipment for such presentations in the courtroom.

Plaintiffs' proposed bill of costs for exemplification of electronic evidence is problematic in several respects. First, it appears that Plaintiffs' consultant performed work that falls outside the scope of what is permitted or intended by § 1920(4). The Court distinguishes between costs incurred to allow a party to present non-electronic evidence electronically, such as scanning, imaging, and conversion of non-electronic materials, the type of costs allowed in *BDT Products*, and costs incurred to improve the format and design of electronic evidence, including costs to create graphics, animations, and stylized presentations. The latter costs tend to serve a party's aesthetic preferences rather than exemplification of evidence; they have "less to do with conveying information to judge and jury than . . . with an effort to wow them." *Cefalu v. Village of Oak Grove*, 211 F.3d 416, 428 (7th Cir. 2000). Courts recognize that the losing party is not required to pay for the prevailing party's "glitz." *Id.* (quoting *BASF Corp. v. Old World Trading Co.*, No. 86 C 5602, 1992 WL 229473, at *3 (N.D. Ill. Sept. 11, 1992)). Plaintiffs' invoices include many charges suggesting "glitz" rather than costs reasonably necessary for exemplification, such as charges for creation of animation and graphics (including "map & globe graphics" and "compositing red glow on knees"), many hours of editing multiple versions of a PowerPoint presentation for opening argument, and charges for "design/layout" of exhibits. (*See, e.g.,* Dkt. No. 1113, Ex. 1, at 3, 7, 12.)

In addition, it appears that a substantial portion of the charges relate more to the internal organization and management of Plaintiffs' evidence for use in the case, such as bar-coding exhibits, importing them into "Trial Director" software, uploading materials to Plaintiffs' servers, and "marking trial exhibits as withdrawn or admitted," rather than the act of obtaining, creating, or preparing materials for exemplification purposes. (*See id.* at 34.) Further removed from the scope of § 1920(4) are costs incurred by Plaintiffs for their consultant to become familiar with the courtroom and meet with court staff, to practice with equipment, to rehearse a presentation, to meet with Plaintiffs' counsel, and to observe or assist with "[i]n court presentation." (*See id.* at 29, 36.) However worthy or useful such activities may have been for Plaintiffs or their consultant, § 1920(4) does not require the losing party to pay for rehearsals and preparatory activities, meetings, and what appear to be legal and technology support services.

The inclusion of charges that are outside the scope of § 1920(4) is particularly problematic because Plaintiffs' invoices tend to bill for multiple activities within one block of time. For example, one invoice bills thirteen hours for "Trial prep; work on exhibits, video designations, changes to PowerPoint w/Gass, Root." Even if § 1920(4) could be interpreted to include some activities within this block (e.g., "work on exhibits"), the Court cannot separate these services from those that are more likely to fall outside the scope of § 1920 (e.g., "Trial prep") (*Id.*).

Moreover, as Defendant notes, Plaintiffs' invoices generally lack specificity sufficient to allow Defendant or the Court to evaluate the nature and necessity of the specific charges that Plaintiffs seek to tax. The invoices often describe the consultant's work in general terms (e.g., "work on exhibits" (*see id.*)), without specifying the work product, or the particular presentation or exhibits that were prepared. Plaintiffs have withdrawn their request for some of the transcript fees initially requested for some deponents; the Court suspects that similarly unnecessary costs may lurk in Plaintiffs' requested exemplification costs, but it is impossible to tell from the generic descriptions of work in Plaintiffs' invoices.

In addition, judging from the evidence presented to the Court, the Court is of the general impression that Plaintiffs went above and beyond what was reasonably *necessary* to prepare and present their case in a cost-effective manner, both with respect to the volume of evidence and the manner in which it was presented. The proceedings in this matter were conducted entirely before a judge rather than a jury. Though parties are encouraged to use electronic equipment to present evidence and electronic presentations, the *necessity* for doing so is diminished where, as in this case, the parties' exhibits were presented to the Court in non-electronic form, and where the deliberation and consideration of that evidence was not confined by the time constraints of jury proceedings. The Court is concerned that costs for scanning exhibits and printing electronic copies thereof are duplicative of the costs separately taxed for preparing the materials presented in the exhibit books provided to the Court.

Finally, the Court is concerned that fees paid by Plaintiffs exceeded what is reasonably necessary for the services obtained. It appears that a substantial portion of the work performed by Plaintiffs' consultant was of a repetitive and mechanical nature, such as trimming video clips and preparing "screen grabs" of deposition testimony. One invoice charges for approximately seventy hours of making "screen grabs" for three deponents. (Dkt. No. 1113, Ex. 1, at 21-22.) Even if "screen grabs" were reasonably necessary for exemplification purposes, the Court is reluctant to find that Plaintiffs are entitled to reimbursement at the rate of $150 per hour for such routine work.

Therefore, considering the evidence provided by Plaintiffs in response to Defendant's objections to the bill of costs, the complexity of this action throughout each stage of the proceedings, the nature of the proceedings before the Court, and the evidence presented to the Court throughout these proceedings, the Court cannot conclude that all of the charges requested by Plaintiffs under § 1920(4) fall within the scope of that provision. The Court will reduce Plaintiffs' amount of requested costs for electronic evidence to $30,000, which reflects a portion of the costs for scanning and imaging non-electronic materials, preparing and editing video clips of deponents, and creating electronic presentations. However, the Court will disallow the remainder of the costs for exemplification of electronic materials because Plaintiffs' request lacks specificity, and because the costs requested are duplicative of other charges or are outside the scope of § 1920(4).

Therefore, the Court will grant deny Defendant's motion to strike, but will grant Defendant's objections in part, and will allow taxation of costs as follows:

| Description | Cost |
| --- | --- |
| Fees of the clerk | $ 200.00 |
| Fees of court reporters | $ 45,939.79 |
| Fees and disbursements for printing and witnesses | $ 6,039.93 |
| Fees for exemplification: | |
|     Preparation and display of electronic evidence | $ 30,000.00 |
|     Preparation of non-electronic evidence | $ 2,329.38 |
| **TOTAL:** | **$ 84,509.10** |

## III.

For the foregoing reasons, therefore, the Court will grant Defendant's motion for relief from judgment, and will deny Plaintiffs' motion to amend the judgment, in part. Plaintiffs' motion will be denied with respect to the calculation of the amount of interest due under § 500.2006 and § 600.6013(8). The Court finds no fault in Plaintiffs' method of calculation of interest § 600.6013(8), except that the amount must be modified to account for the change in the dates on which interest begins to run under Mich. Comp. Laws § 500.2006. Finally, the Court will deny Defendant's motion to strike the proposed bill of costs, but will grant Defendant's objections in part and allow costs to be taxed in the amount set forth herein.

An order and amended judgment consistent with this opinion will be entered.

Dated: June 24, 2010                  /s/ Robert Holmes Bell
                                      ROBERT HOLMES BELL
                                      UNITED STATES DISTRICT JUDGE